## Richmond

DORIS WILLIAMS v. CLINCHFIELD COAL COMPANY.

November 27, 1972.

Record No. 8053.

Present, Snead, C.J., Carrico, Harrison, Cochran, Harman and Poff, JJ.

*Montie S. Meeks; S. Strother Smith, III (Robert Austin Vinyard; Smith, Robinson & Vinyard*, on brief), for appellant.

*J. Thomas Fowlkes (Penn, Stuart & Eskridge*, on brief), for appellee.

HARMAN, J., delivered the opinion of the court.

This appeal alleges error in an award by the Industrial Commission of Virginia (Commission) denying benefits to Doris Williams (Williams or claimant) on a claim filed against his employer, Clinchfield Coal Company (Clinchfield).

Williams filed his claim with the Commission on August 17, 1970, alleging he was entitled to benefits because he was suffering from coal worker's pneumoconiosis, an occupational disease. The Commission held Williams' claim barred by two waivers executed by him in 1966 and 1968 pursuant to Code § 65-50, subsequently recodified as Code § 65.1-53. Both waivers had been approved by the Commission under the statute.

Williams admits that he executed the waivers. He does not claim any fraud, duress or misrepresentation on the part of Clinchfield.

Williams presents a two-pronged attack on the award of the Commission. His first claim is that the Commission should have held the waivers were effective only to bar a claim for silicosis, the specific disease mentioned therein, and were not effective to bar a claim for coal worker's pneumoconiosis, from which he now claims to suffer. If the Commission was correct in holding the waivers effective to bar his present claim, Williams says that this construction of the statute makes the statute unconstitutionally vague and that the Commission's failure to provide a hearing before approving the waivers violates the Due Process Clause of the United States Constitution.

### I

Williams, who was employed as a coal miner for more than 25 years, made an application for employment and was employed by Clinchfield in 1966. He subsequently left this employment. In 1968 he made a new application for employment and was again employed by Clinchfield.

Prior to being hired on each occasion, Williams was required to undergo a routine physical examination, including a chest X-ray. The X-ray films were reviewed for Clinchfield by Dr. W. C. Elliott who reported in each instance, on forms provided by the Commission, that it was his opinion that Williams was "affected by" or "susceptible to" silicosis since the X-ray films indicated "fibro-nodose infiltration of the lungs." On each occasion Williams, as a precondition to his employment by Clinchfield, signed a waiver on forms provided by the Commission. The waivers read, in pertinent part, "Pursuant to the provision of Sec. 65-50, the undersigned hereby waives the right to claim compensation benefits covering the following physical condition: Fibro-nodose infiltration of lungs consistent with early silicosis."

Williams became disabled in November, 1969. He was seen and examined by Dr. William F. Schmidt, who, in June, 1970, diagnosed his condition as "Soft Coal Worker's pneumoconiosis, Category 1-P." He then filed this claim with the Commission.

At the time Williams signed the waivers in question Code § 65-50 provided:

"When an employee or prospective employee, though not incapacitated for work, is found affected by, or susceptible to, a specific occupational disease he may, subject to the approval of the Industrial Commission, be permitted *to waive in writing compensation for any aggravation of his condition that may result from his working or continuing to work in the same or similar occupation* for the same employer or another employer." (emphasis supplied).

Thus the first argument advanced by Williams must fall in the face of the clear and explicit language of the statute which provides that the waiver may be of the benefit he might otherwise be entitled to claim for *any aggravation of his condition.* The waiver then is of any aggravation of an existing condition and may or may not be a waiver of benefits for the specific occupational disease to which he is susceptible.

The evidence establishes that silicosis and coal worker's pneumoconiosis are diseases of the lungs resulting from exposure to dust. Both are classified medically in the broad category of pneumoconioses. The medical evidence, including the testimony of Dr. Schmidt, Williams' own expert, establishes that it is impossible to distinguish between the two diseases by X-ray examination. Both diseases manifest themselves on the X-ray film as nodules or shadows. It is only after a study of the history of exposure, whether to silica dust, coal dust or both, that the physician can make a calculated medical guess as to whether the disease is silicosis or coal worker's pneumoconiosis.

In his testimony Dr. Schmidt quite candidly admitted that he could not "come up with a positive diagnosis." Such a positive diagnosis could only be made by a lung biopsy, described as a most dangerous procedure, or by autopsy after death.

The evidence thus establishes that Williams, as early as 1966, was suffering from a lung condition described as "fibro-nodose infiltration of the lungs consistent with early silicosis." The evidence shows this condition would have been just as consistent with the disease known as coal worker's pneumoconiosis. Williams entered into voluntary waivers of his right to benefits for aggravation of this condition and the waivers were approved by the Commission. That his condition was aggravated by his continuing to work in the same or a similar occupation is established by his disability, which began in November, 1969, and the medical evidence which shows the condition which disabled him then was the same condition or an aggravation of that condition for which the waivers of benefits were signed.

## II

Williams' argument that Code § 65-50 is unconstitutionally vague and indefinite is, we think, fully answered by Part I hereof.

His second argument, i.e. that the informal procedure followed in obtaining the Commission's approval of the waivers violates Due Process, is likewise without merit.

As we pointed out in *Jewell Ridge Coal Corp.* v. *Vance*, 203 Va. 557, 560, 125 S.E.2d 879, 881 (1962):

"The evident purpose of Code, § 65-50, is to provide conditional employment for those found to be 'affected by, or susceptible to,' a specific occupational disease and at the same time provide protection for the employer who is willing upon the execution of a waiver to employ such persons. As an added safeguard such waiver is subject to the approval of the Industrial Commission."

Williams says Due Process requires a full hearing before the Commission for the waivers to be valid. Such a hearing, he argues, would have afforded him an opportunity to be present, to challenge the evidence in support of the waivers and to present evidence in opposition to approval by the Commission. To support this position Williams relies primarily on *Goldberg* v. *Kelly*, 397 U.S. 254 (1970), and *Armstrong* v. *Manzo*, 380 U.S. 545 (1965), both of which are inapposite to the factual situation presented here. Those cases dealt with the right under Due Process to a meaningful hearing prior to the termination of existing rights or benefits.

Here Williams had no legal right to become employed by Clinchfield nor was Clinchfield under a legal obligation to provide him with employment.

The waivers were voluntarily signed by Willaims as a precondition in order to obtain employment by Clinchfield. Because of the waivers the statutory right to compensation benefits for aggravation of Williams' condition, which might otherwise have arisen under the Workmen's Compensation Act, was waived and never came into being.

*Affirmed.*