**UNITED MINE WORKERS OF AMERICA et al.**

**v.**

**INDUSTRIAL COMMISSION OF VIRGINIA et al.**

Civ. A. No. 73–447–R.

United States District Court,
E. D. Virginia,
Richmond Division.

April 29, 1974.

W. H. C. Venable, S. Strother Smith, III, Richmond, Va., Willard P. Owens, Washington, D. C., for plaintiffs.

Henry M. Massie, Jr., Asst. Atty. Gen. of Va., Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiffs seek relief in the form of a declaration that Section 65.1–53 of the Virginia Workmen's Compensation Act is, on its face and as applied, in violation of the Fourteenth Amendment to the Constitution of the United States. Jurisdiction is attained pursuant to 42 U.S.C. §§ 1981, 1983 and 28 U.S.C. §§ 1331 and 1343(3). The amount in controversy exceeds $10,000 exclusive of interest and costs.

The case is presently before the Court on defendants' motions to dismiss for failure to state a claim upon which relief can be granted, to dismiss the action as to the plaintiff Doris Williams, or, should the case as a whole not be dismissed, for the empanelling of a three-judge court. The parties have submitted detailed memoranda in support of their respective positions and, on the material before it, the Court deems the matter ripe for disposition.

The facts presented are as follows: Plaintiff Doris Williams, an employee of Clinchfield Coal Company, filed with the Industrial Commission of Virginia an application for a hearing on August 12, 1970, seeking compensation under the Virginia Workmen's Compensation Act and alleging the contraction or aggravation of an occupational disease of coal miners pneumoconiosis. The Coal Company defended on the basis of two waivers of benefits executed by Williams in 1966 and 1968, respectively. Such a waiver is provided for under Va.Code

Ann. § 65.1–53 (1973) which reads as follows:

> When an employee or prospective employee, though not incapacitated for work, is found to be affected by, or susceptible to, a specific occupational disease he may, subject to the approval of the Industrial Commission, be permitted to waive in writing compensation for any aggravation of his condition that may result from his working or continuing to work in the same or similar occupation for the same employer.

Both waivers were approved by the Industrial Commission.

Each of the waivers executed by Williams waived his right to claim compensation benefits for the aggravation of "Fibro-nodose infiltration of lungs consistent with early silicosis." A hearing examiner held the waiver inapplicable to a disease other than silicosis and awarded relief. The full Industrial Commission, however, reversed, holding the waiver effective for the pathologically similar disease of coal miner's pneumoconiosis. On appeal, the Supreme Court of Virginia affirmed this decision. Williams v. Clinchfield Coal Co., 213 Va. 445, 192 S.E.2d 751 (1972). The other plaintiffs in this action signed similar waivers. Plaintiffs Russ and Hess signed waivers relating to "silicosis" and "silicosis or any aggravation thereof", respectively. Benefits to these plaintiffs have been denied by a Deputy Commissioner and the decisions have been appealed to the full Commission. Plaintiffs allege that there are approximately 23 similar claims outstanding before the Commission and that the Commission has advised that they will be processed in accordance with the *Williams* decision.

The plaintiffs raise three constitutional arguments based on the foregoing related facts: (1) that the waiver statute on which the validity of the above deni-

als ultimately rests is unconstitutionally vague: (2) that the procedure for execution of waivers and their approval by the defendants is arbitrary and discriminatory thus denying equal protection; and (3) that the statute is so unfair on its face as to substantively violate the due process clause of the Fourteenth Amendment. The viability of these claims will be considered *seriatim*.

*Vagueness*

■ Plaintiffs' argument that the statute is vague regarding whether a waiver may be executed as to diseases not compensable at the time of waiver can be readily disposed of. The statute provides for waivers of benefits relating to occupational diseases. Although an employer might see no need to obtain a waiver of benefits for a disease for which no benefits were required, there is no hint of any statutory limitation of waivers to diseases compensable at the time. The only question on this score is the nature of the waiver in fact executed, and that is not, standing alone, a constitutional issue.

■ On other grounds, however, plaintiffs' claims of vagueness are somewhat more difficult of resolution. The statute states that when an employee or prospective employee is found to be affected by or susceptible to "a *specific occupational disease*," he may waive rights for "any aggravation of his condition." Plaintiffs allege that prior to the Virginia Supreme Court's decision in Williams v. Clinchfield Coal Co., *supra*, persons signing such waivers reasonably believed that the statute mandated some connection between the "specific occupational disease" to which they were diagnosed as susceptible [1] and the aggravated "condition" for which they could waive benefits. They might well, it is argued, see no other reason why the diagnosis of susceptibility to a "specific" disease would be required. The Virgin-

---

1. Defendants state in their Reply to plaintiffs' Memorandum in Opposition to defendants' Motion to Dismiss, at 1, that the primary role of the Commission under this statute is to insure the initial "proper medical certification."

ia Supreme Court, however, adopted a different interpretation of the statute in *Williams, supra,* 192 S.E.2d at 753:

> Thus the first argument advanced by Williams must fall in the face of the clear and explicit language of the statute which provides that the waiver may be of the benefit he might otherwise be entitled to claim for *any aggravation of his condition.* (Emphasis in original) The waiver then *is of any aggravation of an existing condition and may or may not be a waiver of benefits for the specific occupational disease to which he is susceptible.* (Final emphasis added).

Plaintiffs' expectations were thus defeated in the *Williams* decision which must be taken to embody the proper reading of the statute. If that is the meaning of Va.Code Ann. § 65.1–53, plaintiffs contend, and no necessary relationship exists, the statute prior to that gloss was so inartfully drawn that a person of common intelligence would either have to guess as to its meaning or be affirmatively misled by its terms. *Cf.* Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926).

In the final analysis, however, plaintiffs' harm arose not from affirmative enforcement of a state statute setting the parameters of allowed waiver, but from a state interpretation of the intended scope of the waivers which they in fact executed. In *Williams,* the Virginia Supreme Court merely enunciated the proper interpretation of § 65.1–53. The question underlying the compensation controversy is the scope of the waivers signed. Its resolution turns on the manifested intent of the parties to those waivers which is an issue for state determination. The *Williams* decision did not preclude plaintiffs from raising arguments before the state agencies and courts that they intended a limited waiver. They remained free to bolster their position with arguments demonstrating

a relation between their alleged limited intent and what the words of the statute themselves seemed to plaintiffs to mean. But the ultimate question in the compensation controversy remains one of manifested individual intent, not statutory construction. Any vagueness in the actual terms of this statute does not have an effect upon plaintiffs so fundamentally unfair as to violate the due process clause of the Fourteenth Amendment.

■ The Court finds no heightened standard imposed by the Constitution of the United States by which waivers of workmen's compensation benefits must be judged. Although plaintiffs cite numerous cases of federal disapproval of state waiver provisions, those provisions called for a waiver of elements of procedural due process specifically guaranteed by the Constitution of the United States. See, *e. g.,* Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (notice and hearing in enforcement of a conditional sales contract). There is no corresponding federal constitutional right to workmen's compensation benefits and no corresponding federal scrutiny of their waiver.

■ Plaintiffs' vigorous assertions that no waiver of the breadth found by the Commission was intended are not properly addressed to this Court. In the *Williams* case, the Virginia Supreme Court found that Williams waived benefits for the aggravation of a pre-existing condition.[2] It found aggravation of that condition to be the basis of his claims. It further found that the waiver executed covered the condition itself and was not limited to the specific medical disease with which that condition was originally diagnosed as being "consistent." The court did not hold that a specifically limited waiver could not be executed or that a limited waiver would not be valid. It simply held that as a matter of state law the particular waiver executed went to the condition rather than the diagnosis and that such a waiv-

---

2. It found that waiver voluntary and no claim of fraud, duress or misrepresentation was presented. 192 S.E.2d 752.

er was allowed under Virginia's statute. This Court cannot go behind those findings. As heretofore stated, these findings do not reveal § 65.1–53 to be constitutionally infirm as applied in *Williams* or on its face.[3]

### Equal Protection

■ Plaintiffs argue that since questions of individual "livelihood, health, and safety" are here involved, this Court's equal protection review must be conducted under the standards of strict judicial scrutiny. Since that test is reserved for cases involving laws that operate to the disadvantage of suspect classes or interfere with the exercise of fundamental rights and liberties explicitly or implicitly protected by the Constitution, San Antonio, etc., School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), such a standard is inappropriate in this case. In cases other than those described above, a statutory classification is valid if found rationally related to a legitimate legislative objective. Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

■ The purpose of the waiver statute, as articulated by the Supreme Court of Virginia in Jewell Ridge Coal Corp. v. Vance, 203 Va. 557, 125 S.E.2d 879 (1962), is to provide for conditional employment of workers found susceptible to occupational diseases while at the same time protecting the employer who is willing upon execution of a waiver to hire such a worker. It would be inappropriate for this Court to say that such a balancing of interests was beyond legislative competence[4] or that the use of a waiver provision applicable to those found susceptible to occupational diseases bore no rational relation to that end.

Plaintiffs argue that if the statute does not deny equal protection on its face, its relegation of the decision of who must sign waivers to individual employers results in arbitrary and capricious administration. Absent a showing of resulting discrimination along suspect lines, it does not appear to the Court that allowing an employer to decide whether for his protection a waiver would be desirable in a specific case represents an arbitrary means of pursuing the objective set out above. Such a scheme is not without its potential for abuse, but neither is it without rational foundation.

### Substantive Due Process

■ Much of plaintiffs' argument goes not to the validity of the statutory scheme by which workers asked to execute waivers are determined, but to the validity of any waiver provision substantially similar to Va.Code Ann. 65.1–53. Certain attacks are raised in the course of plaintiffs' equal protection discussion; others are advanced under the Due Process Clause of the Fourteenth Amendment. Under either clause the standard for judging the validity of a statutory provision of this nature is the same: the "rational relation to a legitimate legislative objective" test specified heretofore. Plaintiffs' claims fall into two categories: (1) that the opportunity for waiver in the context of a workmen's compensation scheme is irrational on its face, and (2) that the waiver in this case interferes with an alleged constitutional right to pursue a chosen occupation. In pursuing their first argument, plaintiffs have advanced the humanitarian and social considerations embodied in the concept of workmen's compensation. They argue that a waiver provision allowing an employer to remove himself from liability is not only unrelated to those objectives, but substantially undermines the possibility of their realization. However, state legislatures are not limited to pursuit of the

---

3. It is not clear to the Court that the pending claims of the other plaintiffs in this case are not distinguishable as a matter of state law from that of Williams.

4. On this issue see the discussion of substantive due process, *infra.*

goals of workmen's compensation in its pure form, no matter how socially desirable some may find those goals. Were the General Assembly of Virginia to repeal workmen's compensation in its entirety, it would be difficult to argue that such a decision would be repugnant to the federal constitution. The argument is even more difficult when addressed to the institution of a modified program allowing an employer the choice not to hire a worker absent a waiver when the possibility exists that his physical condition will significantly deteriorate due to such employment and that liability for benefits will ensue. The wisdom of such a plan may indeed be debatable, but the forum for resolution is the legislature. Broad deference is given to legislative determinations of what is beneficial in the areas of health and economic development. The limitations on the judicial branch in this area are to be emphasized. As stated in Ferguson v. Skrupa, 372 U.S. 726, 729–730, 83 S.Ct. 1028, 1031, 10 L.Ed.2d 93 (1963):

> Under the system of government created by our Constitution, it is up to legislatures, not courts, to decide on the wisdom and utility of legislation. There was a time when the Due Process Clause was used by this Court to strike down laws which were thought unreasonable, that is, unwise or incompatible with some particular economic or social philosophy . . .

> We have returned to the original constitutional proposition that courts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws. . . . Legislative bodies have broad scope to experiment with economic problems, and this Court does not sit to subject the State to an intolerable supervision hostile to the basic principles of our government and wholly beyond the protection which the general clause of the Fourteenth Amendment was intended to secure.

The balance between the responsibility of the employer to provide compensation benefits, his ability to minimize the necessity of those benefits, and the opportunity of coal miners to obtain employment, all rational social and economic policy considerations, is a matter peculiarly within the competence of the state legislature. Plaintiffs' argument that the waiver policy is irrational must fail.

No greater merit can be found in plaintiffs' claim of a substantive right to pursue their chosen occupation without legislative interference. Workmen's compensation is itself an interference with freedom of contract. Despite the emergence of rigorous court enforcement of substantive due process in some areas of the law, see Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the demise of such judicial intervention in the area of economic and social welfare legislation has long since been completed. Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934); West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937).

For the reasons stated above, defendants' motion to dismiss will be granted.

An appropriate order will issue.