# Richmond

CITY OF WAYNESBORO v. BERNARD L. KEISER, ET AL.

September 1, 1972.

Record No. 7847.

Present, Snead, C.J., I'Anson, Carrico, Harrison, Cochran and Harman, JJ.

*Carter R. Allen* (*Allen & Dalton,* on brief), for plaintiff in error.

Humes J. Franklin, Jr. (Franklin, Poindexter & Franklin, on brief), for defendants in error.

COCHRAN, J., delivered the opinion of the court.

Mary Keiser filed in the court below a petition under the provisions of Va. Code Ann. § 58-1145 (1969)[1], for correction of the alleged erroneous assessments of real estate taxes by the City of Waynesboro for the years 1966, 1967 and 1968. An *ore tenus* hearing was held on February 11, 1969 in which the trial court overruled the City's motions to strike petitioner's evidence, made at the conclusion of her evidence and again at the conclusion of all evidence. Thereafter Mary Keiser died and by order entered December 3, 1970, Bernard L. Keiser, Dorothea K. Franklin, Anne K. Brower and Mary Frances Bradley were substituted in her place. On March 29, 1971, the trial court entered an order reducing the assessments complained of by directing that the real estate be divided into two parcels and ordering the assessment of each parcel at a reduced valuation per square foot. A final order was entered on April 8, 1971, overruling the City's motion for a new trial and affirming the order of March 29, 1971. We granted the City a writ of error.

The Keiser real estate fronted on the New Hope Road and extended from this road or street to the Chesapeake and Ohio Railway Company right of way in Waynesboro.

At the hearing petitioner attempted to establish lack of uniformity by comparing assessments of her land with those of a tract adjoining

---

[1] § 58-1145, as amended in 1968, provides in pertinent part as follows:

"Any person assessed with county or city levies or other local taxes on real estate, aggrieved by any such assessment, may, unless otherwise specially provided by law, within two years from the thirty-first day of December of the year in which any such assessment is made, . . . apply for relief to the circuit court of the county or any city court of record of the city wherein such assessment was made. In such proceeding the burden of proof shall be upon the taxpayer to show that the property in question is assessed at more than its fair market value or that the assessment is not uniform in its application, *or if the court in its discretion finds the ends of justice would be met by making an adjustment,* but it shall not be necessary for the taxpayer to show that intentional, systematic and willful discrimination has been made.

"*In the event it comes or is brought to the attention of the commissioner of revenue of the locality that the assessment on a parcel of real estate is improper or is based on obvious error and should be corrected in order that the ends of justice may be served, the commissioner shall apply to the appropriate court, in the manner herein provided for relief of the taxpayer. Such application may include a petition for relief for any of several taxpayers.*" (emphasis added to show the language inserted by the 1968 amendment, Acts of Assembly, 1968, ch. 630).

on the west assessed to Deputy. Through the City's Commissioner of Revenue the assessments were shown to be as follows:

### 1966 and 1967

| | | | | | |
|---|---|---|---|---|---|
| Keiser | 9.554 acres | Land | $2860.00 | Bldgs. | $3530.00 |
| Deputy | 7.84 acres | Land | $1880.00 | Bldgs. | $4800.00 |

### 1968

| | | | | | |
|---|---|---|---|---|---|
| Keiser | 4.66 acres | Land | $7310.00 | Bldgs. | $2400.00 |
| Deputy | 6.86 acres | Land | $3970.00 | Bldgs. | $2320.00 |

Two other witnesses testified on behalf of Mary Keiser. The first, Humes J. Franklin, Sr., an attorney who managed her affairs under a power of attorney, testified that he was familiar with real estate values in Waynesboro and that the Keiser land and the Deputy land were of the "[s]ame use and similar in description". He thought, but was not sure, that the Keiser land was zoned for light industrial use under the City's Zoning Ordinance and that Deputy land was zoned for residential use. He asserted that Mary Keiser resided in the dwelling on her land and that, to provide funds for her maintenance, he had negotiated sales of two parcels in 1967. Finding that Virginia Panel Corporation, which needed the lot to expand, was willing to pay "a bit more for it", he sold about an acre to that company for $10,000.00. He later negotiated from that price down in effecting a sale of several acres to Clifton Forge-Waynesboro Telephone Company for approximately $8,000.00 per acre. In his opinion the residue of the Keiser lands was worth less per acre after the two conveyances, partly because the street along which the property lay had been made a dead end street.

The second witness, Mark Loomis, a real estate and insurance broker in the community, testified that the Keiser and Deputy properties were "very similar" in value, having "relatively the same distance from the highway to the railroad and about the same road frontage, too". However, he admitted that he had only viewed the properties and had not determined their zoning, considered the two conveyances of parcels from the Keiser land or examined the assessments.

Jacob Ryerson, full time member of the Board of Real Estate Assessors, was the City's only witness. He testified in detail as to the methods and criteria used in making assessments. He explained that

real estate in Waynesboro was appraised at approximately 80% of average fair market value, to which the assessment ratio of 30% was applied, resulting in an "ideal" average assessment at 24% of average selling price.

Ryerson confirmed that under the City's Zoning Ordinance the Keiser property was in M-1 Light Industrial District and the adjoining Deputy property was in RA-2 Single-Family District (residential) and stated that the difference in zoning affected the market value of each. He compared the per square foot assessment rate on the Keiser land with rates applied to other properties in the same zoning district as follows: Keiser—3.6 cents; Virginia Panel Corporation—3.6 cents on the parcel purchased from Keiser and 3.0 cents on its original parcel; C. G. Wilson—2.4 cents; Whitesell—2.4 cents; and C. G. Wilson—2.4 cents. He explained that the lower assessments were made on the original Virginia Panel Corporation parcel, both Wilson tracts, and the Whitesell parcel because they sold for less, had less depth between road and railroad, less use for multiple purposes and more drainage problems than the Keiser land.

Ryerson had ascertained that the two parcels conveyed from the Keiser land in 1967 consisted of .706 acre conveyed to Virginia Panel Corporation for $6,890.00, or 22.4 cents per square foot, and 3.998 acres conveyed to Clifton Forge-Waynesboro Telephone Company for $31,343.60, or 18 cents per square foot. The average of these two sales was 20.2 cents per square foot. Applying the "ideal" 24% assessment ratio would have resulted in an assessment of 4.8 cents per square foot, which Ryerson felt could be legally justified, but the actual assessment was 3.6 cents on the Virginia Panel parcel. Ryerson subsequently submitted the assessment independently made by the State Corporation Commission which showed that the per square foot assessment of the parcel purchased by the Telephone Company from Keiser was also 3.6 cents.

Ryerson testified to the assessment of the Deputy property and other real estate similarly zoned. The Deputy land was assessed at 1.23 cents per square foot. Ryerson explained, on the basis of availability of utilities and other factors, why this assessment was higher than some and lower than others. The value of this land, and other nearby land zoned for residential purposes, was, he said, "related to the sales pattern in those blocks that have been selling . . .".

In its order of March 29, 1971, the trial court divided the Keiser property into two parcels as shown on a plat incorporated therein

by reference. The parcel adjoining the Deputy property was ordered to be assessed at the same rate as the Deputy property (1.23 cents per square foot). The other parcel, slightly larger, was ordered to be assessed at the same rate as the Wilson and Whitesell parcels lying east of the Telephone Company and Virginia Panel lands (2.4 cents per square foot).

Counsel for the landowners conceded in argument before us that the Keiser land was not assessed at more than its fair market value. He contended, however, that there was evidence of lack of uniformity in application of the assessment which justified the corrective action taken by the trial court. We do not agree.

The uncontradicted evidence showed that the Keiser land was zoned for light industrial use, that the Deputy land was zoned for residential use only and that the difference in zoning materially affected market value. All that can be said of the evidence for Mary Keiser, and under familiar principles we consider it in the light most favorable to her, is that it showed a difference in assessments for the two adjoining tracts of land, which were being used for residential purposes and had similar physical characteristics. While the two parcels conveyed from the Keiser lands may have brought prices somewhat in excess of fair market value, the evidence showed that, in making the assessment, 24% of the average selling price of the parcels was reduced by one-fourth from 4.8 cents to 3.6 cents per square foot, and the reduced assessment was then applied uniformly to these lots and to the residue of the Keiser lands. Moreover, Ryerson's testimony was unrebutted as to the factors which caused the nearby properties zoned for light industrial use to be assessed at lower rates.

Under § 58-1145 the burden was on the taxpayer to show lack of uniformity to overcome the presumption in favor of the validity of the assessment. *American Viscose Corp.* v. *City of Roanoke*, 205 Va. 192, 135 S.E.2d 795 (1964); *City of Norfolk* v. *Snyder*, 161 Va. 288, 170 S.E. 721 (1933). But the taxpayer produced no probative evidence of lack of uniformity in application of the assessment to comparable properties. The City, on the other hand, produced evidence affirmatively showing uniformity.

The question remains whether the trial court, which assigned no reasons for its action, could, without supporting evidence, adjust the Keiser assessments under the discretionary provisions of § 58-1145. The City contends that the portion of the 1968 amendment to the statute which permits adjustments "if the court in its discretion finds

the ends of justice would be met by making an adjustment . . ." is unconstitutional. We agree.

The only standards for taxation provided by the 1902 Constitution, under which this case arose, are found in Sections 168 and 169 of Article XIII. Section 168 requires uniformity and Section 169 requires assessment at "fair market value, to be ascertained as prescribed by law." Here, the thrust of the taxpayer's evidence was that there was no uniformity of assessment as between two adjacent parcels, based upon their use for residential purposes. But uniform assessment on the basis of fair market value, not on the basis of use, is the criterion established by the 1902 Constitution.

The 1968 amendment, vesting discretionary powers in the courts, is vague and overbroad. It provides no guidelines or standards for decision. It undertakes to provide a third ground for tax relief inconsistent with and distinct from the two standards of fair market value and uniformity imposed by the Constitution and implemented by § 58-1145 prior to the 1968 amendment. Under the amendment any arbitrary adjustment in violation of the constitutional mandate could be justified by a court.

We have declared several statutes and ordinances which delegated the power of decision to administrative officers unconstitutional because of lack of standards. *York* v. *City of Danville*, 207 Va. 665, 152 S.E.2d 259 (1967); *Andrews* v. *Board of Supervisors*, 200 Va. 637, 107 S.E.2d 445 (1959); *Chapel* v. *Commonwealth*, 197 Va. 406, 89 S.E.2d 337 (1955); *Thompson* v. *Smith*, 155 Va. 367, 154 S.E. 579 (1930).

Authorities elsewhere support the view that this particular delegation of legislative power is void. In *Moore* v. *Langton*, 92 R.I. 141, 167 A.2d 558 (1961) a statute provided that " '[a]ny taxpayer aggrieved by the determination [of the amount of the assessment] may request a hearing and the tax administrator may make such adjustment of the tax as he may deem proper' ". This was held to be an unconstitutional delegation of authority. Although in the present case we are confronted with a delegation of authority to the judiciary rather than to an administrative officer or tribunal, the same restrictions apply. *See, e.g., City of Auburndale* v. *Adams Packing Association*, 171 So.2d 161 (Fla. 1965); *Galloway* v. *Truesdell*, 83 Nev. 13, 422 P.2d 237 (1967); *Sutherland* v. *Miller*, 79 W. Va. 796, 91 S.E. 993 (1917); *In Re Petition for Fond du Lac Metropolitan Sewerage District*, 42 Wis.2d 323, 166 N.W.2d 225 (1969).

We find it unnecessary to disturb the remainder of § 58-1145, including the second paragraph added by the 1968 amendment. This paragraph authorizes the commissioner of revenue to institute proceedings to correct assessments that are improper or based on obvious error in order to attain the ends of justice. We construe this to mean that the ends of justice are to be attained, not as a new substantive ground of relief beyond the purview of the Constitution, but through a new alternative procedure under which the commissioner of revenue, rather than the taxpayer, may assume the burden of having the court correct errors, clerical or otherwise, in applying the prescribed standards of fair market value and uniformity to assessments.

Although absence of a severability clause gives rise to a presumption that the statute was intended to stand or fall in its entirety, the test of severability is whether the legislature would be satisfied with what remains after the invalid part has been eliminated. *Boyles* v. *City of Roanoke*, 179 Va. 484, 489, 19 S.E.2d 662, 664 (1942). Prior to 1968 the taxpayer-initiated procedure set forth in § 58-1145 for correcting erroneous assessments had been a part of the statute law of the Commonwealth for many years. *See, e.g.*, Code (1919) § 2389. By the 1968 amendment the General Assembly undertook to provide an alternative procedure as well as a new substantive basis for relief. Clearly it did not intend to jeopardize the previously existing procedure or standards by which the validity of challenged assessments had been determined. We think it equally clear that the legislature meant to preserve the alternative procedure afforded by the 1968 amendment, regardless of the validity of the proposed new substantive ground for relief which we have held to be unconstitutional. Therefore, the remainder of § 58-1145 will remain in full force and effect. *See Tilton* v. *Richardson*, 403 U.S. 672, 684 (1972).

With the unconstitutional portion of § 58-1145 deleted, we find that the City's motion to strike petitioner's evidence at the conclusion of the evidence should have been granted and the petition dismissed. Accordingly, we reverse the case and enter final judgment for the City.

*Reversed and final judgment.*