**VINTAGE IMPORTS, LTD., Plaintiff,**

v.

**JOSEPH E. SEAGRAM & SONS, INC. and Gold Seal Vineyards, Inc., Defendants.**

**Civ. A. No. 75–568–N.**

United States District Court, E. D. Virginia, Norfolk Division.

March 11, 1976.

Morris H. Fine, Lewis Allen Fine, Fine, Legum & Fine, Norfolk, Va., for plaintiff.

Thomas G. Johnson, Jr., James R. Warner, Jr., Willcox, Savage, Lawrence, ·Dickson & Spindle, Norfolk, Va., for Joseph E. Seagram & Sons, Inc.

Conrad M. Shumadine, David Y. Faggert, Kaufman, Oberndorfer & Spainhour, Norfolk, Va., for Gold Seal Vineyards, Inc.

## MEMORANDUM OPINION AND ORDER

CLARKE, District Judge.

Vintage Imports, Ltd. (hereinafter "Vintage"), a duly licensed wholesale wine distributor, alleges that Joseph E. Seagram & Sons, Inc. (hereinafter "Seagram") and Gold Seal Vineyards, Inc. (hereinafter "Gold Seal") ceased selling Vintage its products in derogation of its obligations pursuant to Section 4–80.2 Code of Virginia (1950, as amended). Vintage filed suit in the Circuit Court of the City of Virginia Beach, Virginia, on October 15, 1975. Defendants filed a petition for removal on November 6, 1975, pursuant to 28 U.S.C. 1441(a). Jurisdiction is attained pursuant to the Court's authority to preside over disputes among citizens of different states. 28 U.S.C. § 1332. Venue is established because the events in issue occurred within the Eastern District of Virginia.

Defendants aver that the Virginia statute upon which plaintiff is proceeding is unconstitutional. Three grounds are forwarded to support this conclusion. First, the defendants argue that the statute is allegedly void for vagueness. Another purported infirmity of the statute is that the state legislature exceeded the scope of its police power authority by enacting the legislation. Finally, the statute is arguably proscribed by the Virginia Constitution prohibition against special or exclusive legislation.

Section 4–80.2 of the Code of Virginia (1950, as amended) provides:

"§ 4–80.2. *Coercing or inducing beer or wine wholesaler to violate certain provisions; cancelling agreement or franchise to sell beer or wine; injunctive relief.*—(a) It shall be unlawful for any wholesaler, vintner, winery or brewery, or any officer, agent or representative of any winery or brewery:

"(1) To coerce, or attempt to coerce, or persuade any person licensed to sell beer, wine or beverages at wholesale, to enter into any agreements or to take any action which will violate or tend to violate any provisions of chapters 1 (§ 4–1 et seq.), 1.1 (§ 4–98.1 et seq.) or 2 (§ 4–99 et seq.) of Title 4 of the Code of Virginia, or any rules or regulations issued in accordance therewith; or

"(2) Unfairly, without due regard to the equities of such wholesaler, vintner, winery or brewery and without just cause or provocation, to cancel or terminate in whole or in part, any agreement or contract, written or oral, or the franchise of such wholesaler, vintner, winery or brewery existing on January one, nineteen hundred sixty-four, or hereafter entered into, to sell the beer or wine manufactured or distributed by the winery or brewery;

provided, also, that on and after June one, nineteen hundred seventy-four, this provision shall be a part of any franchise, contract, agreement, or understanding, whether written or oral, between any wholesale dealer in beer, wine or beverages licensed to do business in Virginia, and any brewery, vintner or winery doing business with such licensed wholesaler, just as though said provisions had been specifically agreed upon between said wholesaler and said brewery, vintner or winery.

"(a1) The doing or accomplishment of any of the following acts shall constitute prima facie evidence of a contractual franchise relationship within the contemplation of this section, as between a licensed beer, wine or beverage wholesaler and a brewery, vintner or winery, to wit:

"(1) The shipment, preparation for shipment or acceptance of any order by any brewery, vintner or winery or its agent for any beer, wine or beverages to a licensed wholesale distributor within the State of Virginia.

"(2) The payment by a licensed wholesale distributor in the State or the acceptance of payment by any brewery, vintner or its agent for the shipment of an order of beer, wine or beverages intended for sale within the State.

"(b) The circuit courts in this State having jurisdiction are hereby vested with jurisdiction and power to enjoin the cancellation or termination of a franchise or agreement between a wholesaler of beer, wine and a brewery, vintner or winery at the instance of such wholesaler, vintner, winery or brewery who is or would be adversely affected by such cancellation or termination. In granting such an injunction, the court shall provide that no brewery, vintner or winery shall supply the customers or territory of the wholesaler through servicing said territory or customers through other distributors or means while the injunction is in effect.

"(c) The Alcoholic Beverage Control Board is empowered to investigate any violations of this section and to furnish to the Commonwealth's attorney of the county or city having jurisdiction of the offense information with respect to any violations of this section. The Board shall have the power to enforce conformance with the provisions of any injunction granted by the court under the terms of this section, and, if the court finds that there has been a violation of the provisions of any injunction granted by it, the Board may revoke or suspend the permit of any wholesaler and the permission of any brewery, vintner or winery to ship beer, wine and beverages into the State of Virginia.

"(d) As used in subsection (a)(2) hereof, the words 'cancel or terminate in whole or in part' shall be deemed to include the splitting or dividing by the brewery, vintner or winery of all or part of the territory or area of primary responsibility assigned to an existing wholesaler, and further, be deemed to include the granting by the brewery, vintner or winery of another dual franchise distributorship for the same or part of the same territory or area of primary responsibility assigned to an existing wholesaler. (1964, c. 649; 1968, c. 728; 1974, c. 460.)"

■ The Court is confronted by the threshold question of whether it should abstain to permit the state court to interpret the challenged statute.[1] The abstention issue is complicated by the fact that the Court's jurisdiction is premised on diversity of citizenship requiring the Court to apply Virginia law. On a theoretical level, this Court should not be expected to render a different result on the merits than the Virginia state court. However, defendants sought to avoid the state court of the Commonwealth of Vir-

---

1. A three judge court, 28 U.S.C. § 2281, is not mandated in light of the fact that defendants seek declaratory relief and are not seeking to enjoin the enforcement of a state statute.

ginia by their invocation of 28 U.S.C. § 1441. It would indeed appear cyclic to require defendants to litigate their claims in the very state court they seek to avoid. Nevertheless, there is not any constitutional or statutory obstacle to abstaining in diversity of citizenship cases.[2]

■ Abstention is a judicially created vehicle designed to avoid premature constitutional decisions of matters relating to state law. The doctrine of abstention was first enunciated in *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Abstention is appropriate to avoid "the waste of a tentative decision as well as the friction of a premature constitutional adjudication," *Pullman, supra* at 500, 61 S.Ct. at 645, 85 L.Ed. at 974. Abstention contemplates remitting issues raising questions of state law to the state courts to permit state construction or limiting interpretation thereby potentially alleviating a premature constitutional determination by the Federal courts. *Harrison v. NAACP,* 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959). The state court decision may resolve the state law issues in a manner mooting the Federal constitutional issues. This policy fosters the concepts of federalism and comity in circumventing needless friction with state policy.

■ Although the abstention policy had its genesis in *Pullman,* its application has been broadened to encompass circumstances where a complex state regulatory scheme is coupled with a clearly delineated state procedure for handling the issues in controversy. *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The *Burford* approach is appropriate when a Federal court decision may disrupt a state's management of affairs uniquely within its purview.

■ Abstention has been raised *sua sponte* by the Court. In oral argument, both parties urged the Court to consider the case on its merits and not to abstain.[3] A succinct recitation of the facts is necessary to put this case in context.

Vintage, a wine wholesaler, received wine products from Gold Seal for distribution in the environs of Virginia Beach, Virginia, until August 1, 1975. On that date, Seagram assumed the position of the national distributor of Gold Seal products.[4] After August 1, 1975 Vintage was unable to purchase Gold Seal products. Vintage claims that its termination was in direct contravention of Section 4-80.2 of the Code of Virginia (1950, as amended).

■ The Court must determine whether the circumstances in the instant case dictate that the Court abstain. The very statute in controversy had been challenged previously in *AFA Distributing Co., Inc. v. Pearl Brewing Co.,*[5] 470 F.2d 1210 (4th Cir. 1973). In *AFA Distributing,* the plaintiff beer distributing company attempted to prevent the beer manufacturer from terminating an exclusive franchise to distribute a specific brand of beer in Northern Virginia. The wholesaler invoked Section 4-80.2, Code of Virginia (1950, as amended) to prohib-

2. In *United Gas Pipe Line Co. v. Ideal Cement Co.,* 369 U.S. 134, 82 S.Ct. 676, 7 L.Ed.2d 623 (1962), the Supreme Court ordered abstention in an action based on diversity of citizenship. The Court concluded that, "[w]ise judicial administration in this case counsels that decision of the federal question be deferred until the potentially controlling state-law issue is authoritatively put to rest." *Id.* at 135, 136, 82 S.Ct. at 677, 7 L.Ed.2d at 625. *See generally,* Gowen & Izlar, Federal Court Abstention in Diversity of Citizenship Litigation, 43 Texas L.Rev. 194 (1964).

3. Obviously, the desire of the parties is not controlling on the Court but it is a factor in ascertaining whether abstention is appropriate.

4. Seagram's answer substantiates that it undertook this position.

5. For an excellent dissection of the policy considerations relied upon in this opinion, *see* Note, Federal Court Abstention in Diversity Actions Involving Unsettled State Law; Avoiding Constitutional Adjudication and Interference with State Affairs, 31 Wash. & Lee L.Rev. 186 (1974).

it the termination. The United States District Court construed the statute in favor of the manufacturer and dismissed the wholesaler's Complaint. The District Court construed the statute to apply only to contracts entered into after January 1, 1964. Since the AFA Distributing and Pearl Brewing franchise commenced in 1962, the Court ruled that Section 4–80.2 did not apply and thus, the constitutional questions were not reached. The Fourth Circuit reversed the District Court holding that the special circumstances existed militating for the conclusion that the trial court should have abstained.[6] Abstention was raised by the Fourth Circuit *ex mero motu*.[7] The portion of the statute in controversy was whether the language, "existing on January one, nineteen hundred sixty-four" modified either "franchise" or "such wholesaler, vintner, winery or brewery." The policy considerations underlying abstention mandated the Fourth Circuit to take this extraordinary action. The Court reasoned that since the state law is unclear and a state court decision could conceivably avoid a constitutional decision, the District Court should have abstained. The appellate court surmised that if the state court concluded that Section 4–80.2, Code of Virginia (1950, as amended), applies only to contracts entered after the statute's effective date, no contract clause would arise. However, the appellate court believed that a more likely interpretation of the statute was that it applied to any franchise agreements existing on January 1, 1964. This interpretation would have presented the issue of the statute's constitutionality under the contract clause of the Unit-

ed States Constitution. Therefore, the Court concluded that the maintenance of harmonious federal-state relations should have required the District Court to stay its proceedings until a potentially controlling state law issue is authoritatively put to rest. *AFA Distributing Co., Inc., supra* at 1213. *Cf. United Gas Pipe Line Co. v. Ideal Cement Co.,* 369 U.S. 134, 82 S.Ct. 676, 7 L.Ed.2d 623 (1962). The special circumstances cited for the appropriateness of abstention were that the plaintiff AFA Distributing was a Virginia citizen and thereby would not be subjected to the courts of a foreign forum and the peculiarly exclusive dominion of the state over the control of distribution and sale of alcoholic beverages. Concerning the second circumstance, the Fourth Circuit said that "[p]eripheral and episodic federal court interpretations of state statutory schemes of control are not desirable and could be harmful." *AFA Distributing Co., Inc., supra* at 1214.

The Court of Appeals concurred in the dismissal of the case because the circumstances resembled a *Burford*-type abstention in that one of the rationale supporting abstention was to avoid possible interference with the state scheme of alcoholic beverage control.

Following the Fourth Circuit's opinion in *AFA Distributing,* the Virginia legislature amended Section 4–80.2 in order to alleviate the ambiguity detailed by the appellate court. Commonwealth of Virginia, 1 Acts of Assembly 849 Chap. 460 (1974). The amendment clarified the time period in which the statute was applicable.[8] The amendment did not alter,

---

**6.** The Fourth Circuit recognized that similar to the instant case, the District Court's jurisdiction was attained pursuant to diversity of citizenship and that the Court "cannot close the door to the federal courts merely because such a case involves a difficult question of state law." *AFA Distributing Co., Inc., supra* at 1213. *Cf. Meredith v. Winter Haven,* 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943).

**7.** Black's Law Dictionary 661 (Rev. 4th Ed. 1968) defines the phrase *ex mero motu* as follows: "of his own mere motion; of his own

accord; voluntarily and without prompting or request."

**8.** The relevant portion of the statute, as amended reads:

(2) Unfairly, without due regard to the equities of such wholesaler, vintner, winery or brewery and without just cause or provocation, to cancel or terminate *in whole or in part,* any agreement or contract, written or oral, or the franchise of such wholesaler, vintner, winery or brewery existing on January one, nineteen hundred sixty-four, *or*

explain or augment the portions of the statute challenged in this suit.

This Court must decide whether the Fourth Circuit's decision in *AFA Distributing* is controlling in the instant matter. For the reasons articulated below, the Court is of the opinion that it should not stay its hand.

■ It is undisputed that abstention may be applied only where there are special circumstances. *Zwickler v. Koota,* 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). In *AFA Distributing,* the following special circumstances were relied upon to support the abstention decision: (1) lack of clarity of state law, (2) state court decision may eliminate need of constitutional determination, (3) the party invoking Federal diversity jurisdiction would not be subject to provincial prejudice in light of its Virginia citizenship, and (4) the exclusive dominion of states over control of alcoholic beverage distribution and sale and the federal policy of non-intervention in state regulatory schemes.

State law in *AFA Distributing* was unclear and a state court decision could avoid a constitutional adjudication by the Federal court of the statute. The Court was confronted with two clearly definable alternatives. They were: (1) whether the statute was applicable to contracts entered into prior to the passage of the statute, and (2) whether the statute was applicable to contracts en-

tered into after the passage of the statute. The latter would obviate a Federal court determination of the statute's constitutionality.

Defendants assert that remitting this action to state court is unnecessary because the state courts have previously rendered an opinion on the challenged language. In 1958, the Hustings Court of the City of Portsmouth, Virginia, was presented with language almost identical to that contained in Section 4–80.2, Code of Virginia (1950, as amended), in the case of *American Motors Sales Corporation v. E. L. Bowen and Company, Inc.,* Chancery Docket No. 4498 (June 3, 1958).[9] Suit was initially commenced in Federal court. Judge Hoffman permitted the parties to repair to state court to test the state statute's constitutionality in respect to whether the statute constituted special or class legislation. *E. L. Bowen and Co. v. American Motors Sales Corp.,* 153 F.Supp. 42 (E.D.Va.1957). Judge Hoffman refrained from ruling on that aspect of the state statute's constitutionality absent a controlling state decision.[10] *Bowen, supra,* at 46.

The challenged statute, Section 46–534, provided:

> *"Other coercion of dealers; cancellation of dealer franchises.—*It is unlawful for any manufacturer, factory branch, distributor or distributor branch, or any field representative, of-

hereafter entered into, to sell the beer or wine manufactured *or distributed* by the winery or brewery; *provided, also, that on and after June one, nineteen hundred seventy-four, this provision shall be a part of any franchise, contract, agreement, or understanding, whether written or oral, between any wholesale dealer in beer, wine or beverages licensed to do business in Virginia, and any brewery, vintner or winery doing business with such licensed wholesaler, just as though said provisions had been specifically agreed upon between said wholesaler and said brewery, vintner or winery.* (emphasis indicates amended portion of statute)

**9.** The complete opinion is reproduced in Appendix A.

**10.** However, the District Court did address whether the statute was unconstitutionally

vague. In reference to the language challenged in the instant matter, the Court said:

> Approaching the question of the constitutionality of § 46–534(1), (2) and (3) of the Code of Virginia 1950, the statutes are not so vague and indefinite as to be unenforceable by reason of the failure to prescribe standards. The words "unfairly, without due regard to the equities of a dealer and without just provocation", as well as "coerce" and "threaten", were apparently designed to permit evidence relating to the course of dealings, the nature of the business, the custom of the trade, the details leading up to a failure to renew the franchise, or a threatened cancellation thereof, and other factors to be considered by the court or jury hearing the case. *Id.* at 45–46.

ficer, agent or any representative whatsoever of any of them:

"(1) To coerce, or attempt to coerce any dealer to accept delivery of any motor vehicle or vehicles, parts or accessories therefor, or any other commodities, which shall not have been ordered by such dealer;

"(2) To coerce, or attempt to coerce any dealer to enter into any agreement with such manufacturer, factory branch, distributor or distributor branch, or representative thereof, or do any other act unfair to such dealer, by threatening to cancel any franchise existing between such manufacturer, factory branch, distributor, distributor branch or representative thereof, and such dealer; or

"(3) *Unfairly, without due regard to the equities of a dealer and without just provocation, to cancel the franchise of such dealer.*" (emphasis supplied)

Judge I'Anson, now Chief Justice of the Supreme Court of Virginia, held *inter alia,* contrary to Judge Hoffman (n. 10) that the statute was unconstitutionally vague and indefinite. In an unpublished opinion, Chief Justice I'Anson reasoned that the enforcement of the vague statute would deprive American Motors of its property without due process of law. E. L. Bowen and Company assigned writs of error to the trial court's declaration that Section 46–534 was unconstitutional in that it was vague and indefinite. The Virginia Supreme Court refused to issue the writ of error because, according to the Supreme Court, the judgment of the Hustings Court was plainly right.[11]

The Court believes that in light of the Virginia decision in *American Motors,* it is not necessary to stay its hand to provide the Virginia court an opportunity to decide the issue. Virginia has ruled on the challenged language. The Court is cognizant that a different statute is in issue, but is of the opinion that its purpose was the same in respect to a different field of commerce and that this variance is not a material distinction for abstention purposes. In summary, the Court opines that the first special circumstance cited in *AFA Distributing* —lack of lucidity of state law—does not appear in the case at bar.

■ In *Wohl v. Keene,* 476 F.2d 171 (4th Cir. 1973), it was held that in diversity cases where state law is relatively settled, discretion to abstain is especially limited. The Fourth Circuit relied upon the Supreme Court's cautious warning in *Meredith v. City of Winter Haven,* 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943). In that case, the Court stated:

In the absence of some recognized public policy or defined principle guiding the exercise of the jurisdiction conferred, which would in exceptional cases warrant its non-exercise, it has from the first been deemed to be the duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment.[12]

---

11. The affirmation of the Hustings Court opinion is unpublished. The Court has received a verified copy of the denial of a writ of error issued on October 17, 1958, by the Supreme Court of Virginia.

12. An example of an area in which public policy demands that the federal court abstain is apparent in *Fralin & Waldron, Inc. v. City of Martinsville,* 493 F.2d 481 (4th Cir. 1974). The appellate court affirmed the district court's decision to abstain. Plaintiffs were challenging the constitutionality of local zoning ordinances. The suit raised "legitimate questions involving municipal zoning ordinances, the correct construction of local land use law as to special use permits, and the delineation of the proper scope and exercise of local administrative discretion. Understandably, the courts of Virginia have extensive familiarity and experience with such matters, and we believe that they should have the initial opportunity to pass upon them." *Fralin & Waldron, Inc., supra,* at 482.

This decision is in accord with the general judicial policy of abstaining in the area of local land use disputes. *See, Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). *See generally,* C. Wright, *Law Of Federal Courts,* 196–208 (2d ed.1970).

*Meredith, supra,* at 234, 64 S.Ct. at 11, 88 L.Ed. at 13.

In light of Chief Justice I'Anson's opinion and that the Virginia Supreme Court has expressed its opinion of the statutory language challenged in this suit, the Court opines that state law appears settled obligating the Court to retain jurisdiction.

 The second special circumstance also is absent from this case. In contrast to *AFA Distributing,* a state court decision would not eliminate the constitutional claim. The Court is not confronted with two possible interpretations as in *AFA Distributing.* The core of the statute is attacked on vagueness grounds.[13] The Court should not abstain simply to give state courts an initial opportunity to vindicate the federal claim. *McNeese v. Board of Education,* 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963). Similarly, the Court should not abstain merely because the state law question is difficult. *Meredith v. Winter Haven,* 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943). Thus, the second *AFA Distributing* special circumstance does not surface in these facts.

Seagram & Sons is a corporation formed under the laws of the State of Indiana with its principal place of business in New York, New York. The defendants, unlike *AFA Distributing,* are clearly not citizens of Virginia. They may fear an alleged parochial nature of the Virginia courts.[14] Buttressing this conclusion is the fact that after being sued in state court defendants invoked federal jurisdiction by a means of a Petition of Removal. Therefore, the third consideration supporting abstention in *AFA Distributing* is inapposite here.

The final consideration for abstention employed in *AFA Distributing* is that the states, by virtue of the Twenty-First Amendment, exercise exclusive dominion over the distribution and sale of alcoholic beverages and that federal courts should exercise extreme caution when intervening in state regulatory schemes. Obviously, this is a prevalent consideration in the instant case. The theory behind abstention in these circumstances is twofold.

First, the Twenty-First Amendment provides that:

"ARTICLE [XXI]

"Section 1. The eighteenth article of amendment to the Constitution of the United States is hereby repealed.

"Sec. 2. The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

"Sec. 3. This article shall be inoperative unless it shall have been ratified as an amendment to the Constitution by conventions in the several States, as provided in the Constitution, within seven years from the date of the submission hereof to the States by the Congress."

It is undisputed that the Twenty-First Amendment gave special authority to the states to control the sale and distribution of alcoholic beverages. The Fourth Circuit in *AFA Distributing* relied upon this unique regulatory power imbued to the states to abstain.

Second, abstention has been employed frequently where a state has promulgated a complex regulatory scheme. *See, Burford v. Sun Oil Co.,* 319 U.S. 315, 63

---

**13.** The constitutional issue is not "inchoate" here as in *AFA Distributing.* It has been briefed and argued by the parties. *Superior Motors, Inc. v. Winnebago Industries, Inc.,* 359 F.Supp. 773, 782 (D.So.Car.1973)

**14.** *Crawford v. Courtney,* 451 F.2d 489 (4th Cir. 1971), the case relied on by *AFA Distributing,* addresses this issue in terms of a provincial jury. *AFA Distributing* suggests that

no prejudice from the Court would inure to the plaintiff because it was a citizen of Virginia. This Court believes that the defendants' apprehension of the state court system is understandable from the defendants' vantage point but the Court does not harbor fears of xenophobia in the Virginia state court system. It is also noted that neither party in the instant case has requested a trial by jury.

S.Ct. 1098, 87 L.Ed. 1424 (1943). In light of the Commonwealth of Virginia's inherent power to regulate alcoholic beverage distribution derived from the Twenty-First Amendment coupled with the reluctance of the federal court to interfere with a state regulatory scheme, the Fourth Circuit felt compelled to order abstention in *AFA Distributing.*

The Supreme Court's most recent articulation of the scope of the Twenty-First Amendment appears in *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). The California Department of Alcoholic Beverage Control issued regulations prohibiting explicitly sexual live entertainment and films in bars and other establishments licensed to dispense liquor by the drink. The Supreme Court concluded that in light of the state's broad latitude under the Twenty-First Amendment the prophylactic solution adopted by California is not unreasonable. The Court commented that the scope of California's regulatory authority is not limited "to either dealing with the problem it confronted within the limits of our decisions as to obscenity, or in accordance with the limits prescribed for dealing with some forms of communicative conduct in *O'Brien.*" [*United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).] *California v. LaRue, supra* 409 U.S. at 116, 93 S.Ct. at 396, 34 L.Ed.2d at 351. Addressing the Twenty-First Amendment, the Court stated:

"While the States, vested as they are with general police power, require no specific grant of authority in the Federal Constitution to legislate with respect to matters traditionally within the scope of the police power, the broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare, and morals." *California v. LaRue, supra* at 114, 93 S.Ct. at 395, 34 L.Ed.2d at 349.

■ Nevertheless, state regulatory provisions controlling liquor distribution emanating from the Twenty-First Amendment are not necessarily immunized from scrutiny under other constitutional provisions.[15] *California v. LaRue, supra* 409 U.S. at 115, 93 S.Ct. at 395, 34 L.Ed.2d at 350. *See also, City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed. 109 (1973); *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

■ An analysis of the progeny of *California v. LaRue* reaffirms that the Twenty-First Amendment does not supersede all other provisions of the United States Constitution in the area of liquor regulations. In *Women's Liberation Union of Rhode Island v. Israel,* 512 F.2d 106 (1st Cir. 1975), a Rhode Island statute prohibiting any establishment holding a Class C liquor license from serving beverages to women was struck down in the face of the argument that the Twenty-First Amendment provided the state with extraordinary powers to regulate. The First Circuit, relying

---

15. In a concurring opinion, Mr. Justice Stewart reinforced the majority opinion that the Twenty-First Amendment does not exempt state liquor regulatory schemes from comporting with the other provisions of the United States Constitution. He reasoned:

"This is not to say that the Twenty-first Amendment empowers a State to act with total irrationality or invidious discrimination in controlling the distribution and dispensation of liquor within its borders. And it most assuredly is not to say that the Twenty-first Amendment necessarily overrides in its allotted area any other relevant provision of the Constitution. *See Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515; *Hostetter v. Idlewild Liquor Corp.,* 377 U.S. 324, 329–334, 84 S.Ct. 1293, 1296–1299, 12 L.Ed.2d 350, 354–357; *Dept. of Revenue v. James Beam Co.,* 377 U.S. 341, 84 S.Ct. 1247, 12 L.Ed.2d 362." *California v. LaRue, supra* at 120, 93 S.Ct. at 398, 34 L.Ed.2d at 353.

Lower court decisions applying this proposition include: *Block v. Thompson,* 472 F.2d 587 (5th Cir. 1973); *Peto v. Cook,* 364 F.Supp. 1 (S.D.Ohio 1973) aff'med 415 U.S. 943, 94 S.Ct. 1462, 39 L.Ed.2d 560 (1974); *Cherbonnie v. Kugler,* 359 F.Supp. 256 (D.N.J.1973); *Escheat, Inc. v. Pierstorff,* 354 F.Supp. 1120 (W.D.Wis. 1973); *McCue v. City of Racine,* 351 F.Supp. 811 (E.D.Wis.1972).

upon *LaRue,* concluded that the Twenty-First Amendment "does not release the states from the requirement that the objective of the regulation be permissible, and that the means selected be rationally related to the end to be achieved." [16] *Women's Liberation Union, supra,* at 108.

*Clark v. City of Fremont, Nebraska,* 377 F.Supp. 327 (D.Neb.1974) is particularly relevant to the instant case. Clark, a proprietor of a club serving liquor, challenged a municipal ordinance prohibiting nudity in facilities licensed to serve liquor. Clark challenged the statute on the grounds that its vague and ambiguous terms violated the due process clause of the Fourteenth Amendment and abridged the freedom of expression guaranteed by the First Amendment. The Court concluded that it was inappropriate to abstain because state decision would not avoid the constitutional questions since the Nebraska Supreme Court had twice considered whether municipalities had authority to enact ordinances similar to the challenged one. The Court concluded that a city, under Nebraska law, had authority to regulate a liquor licensee's choice of entertainment by means of such statutes. Reaching the merits, Judge Benson found portions of the ordinance void for vagueness because ". . . the grounds for revocation of liquor licenses are based upon words incapable of intelligible or precise meaning; that these provisions subject liquor licensees to possible arbitrary, and wholly discretionary, administrative decisions as to what constitutes a ground for revocation; and that they provide no ascertainable standards against which a liquor licensee could apply contemplated conduct." *Clark v. City of Fremont, Nebraska,* 377 F.Supp. 327 (D.Neb.1973).

In conclusion, the Court does not believe that the Twenty-First Amendment mandates abstention in the instant case. Though broader powers to regulate liquor inure to the states from the Twenty-First Amendment, the mere existence of the Amendment does not open the legislative gates for the states to vitiate other provisions of the Constitution. Section 4–80.2 of the Code of Virginia was enacted pursuant to the state's general police power and the Twenty-First Amendment. It is undisputed that the federal court has jurisdiction to review whether the statute comports to constitutional standards.

Additionally, the instant case is dissimilar to the *Burford* type of abstention. Section 4–80.2 merely provides a wholesaler with a private right of action against a manufacturer or distributor. The Alcoholic Beverages Commission is authorized to investigate the termination of agreements to ascertain whether the statute has been violated. Section 4–80.2 is a mere shadow compared to the complex, intricate legislation in *Burford.* The plaintiff in *Burford* was attacking the validity of an Order of the Texas Railroad Commission granting a party a permit to drill four oil wells. The Supreme Court recognized that the challenged order is part of a general regulatory scheme of Texas which involved the complexity of facts relating to oil practices and conservation control. In detailing Texas' interest in issuing permits for oil wells, the Court said:

> "It (Texas) must also weigh the impact of the industry on the whole economy of the State and must consider its revenue, much of which is drawn from taxes on the industry and from mineral lands preserved for the benefit of its educational and eleemosynary institutions." *Burford, supra* 319 U.S. at 320, 63 S.Ct. at 1100, 87 L.Ed.at 1427.

---

**16.** In the District Court opinion, Chief Judge Pettine indicated that "[w]hatever its broad effect on the Commerce Clause, the Twenty-first Amendment does not displace the Equal Protection Clause of the Fourteenth Amendment. A statute which is reasonable under the Twenty-first Amendment may still be held unconstitutional for violation of the Fourteenth Amendment." *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). *See also, Walker v. Hall,* 399 F.Supp. 1304 (W.D.Okl.1975); *White v. Flemming,* 374 F.Supp. 267 (E.D.Wis.1974).

In contrast to the Texas regulations, Section 4–80.2, Code of Virginia, does not have an elaborate regulatory scheme nor does the control and distribution of liquor present such peculiar questions of state policy that only a local judicial officer would have the competence and expertise to weigh and decide.[17]

Unlike the Texas regulations, this Court is not asked to delve into any specially constituted state administrative agencies and determine whether they are operating in a permissible manner. There is no maze of procedures and regulations emanating from Section 4–80.2, Code of Virginia. The defendants' primary contention is that the statute is void for vagueness. To reach this issue, the Court is not compelled to examine an intricate state policy but the Court must ascertain facially whether the statute meets constitutional muster.

The Court, therefore, concludes that the special circumstances outlined in *AFA Distributing* are not present here. The Court believes it would be inappropriate to abstain in the instant matter.

The Court has considered the doctrine of abstention so thoroughly in this opinion because of its very strong belief that wherever possible the state courts should be given the opportunity and right to pass upon the constitutionality of their own statutes and that the federal courts should follow the state courts' findings.

## CONSTITUTIONALITY OF SECTION 4–80.2, CODE OF VIRGINIA

Defendants initially contend that Section 4–80.2 is void for vagueness. Two other grounds are raised challenging the statute's constitutionality. In light of the disposition, it is unnecessary to consider these arguments. They rely primarily on Chief Justice I'Anson's opinion

regarding the same language in *American Motors Sales Corporation v. E. L. Bowen & Company, Inc.* Defendants argue that the words, "Unfairly, without due regard to the equities of such wholesaler, vintner, winery or brewery and without just cause or provocation . ." Section 4–80.2, Code of Virginia (1950, as amended) do not provide sufficient notice to persons affected by the statute.

■ A statute must provide sufficient guidance to a person of common intelligence to prevent either having to guess or speculate as to its meaning or have said person affirmatively misled by the statute's terms. *United Mine Workers v. Industrial Commission of Virginia,* 374 F.Supp. 1294 (E.D.Va.1974) *Cf. Connally v. General Construction Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926).

In applying the vagueness doctrine to state statutes and city ordinances under the due process requirement of the Fourteenth Amendment, the United States Supreme Court has stated that no person "shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *Colten v. Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584, 589 (1972) citing *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989, 996 (1954). *See Flannery v. City of Norfolk,* 218 S.E.2d 730, 733 (1975). Elaborating on the underlying theory of vagueness, the Supreme Court reasoned:

"The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes but general enough to take into account a variety of human conduct and sufficiently specific to provide fair

---

**17.** The crux of the *Burford* decision is articulated in the following statement:

"These questions of regulation of the industry by the State administrative agency, whether involving gas or oil prorationing programs or Rule 37 cases, so clearly involves basic problems of Texas policy that equitable discretion should be exercised to

give the Texas courts the first opportunity to consider them." *Burford, supra,* at 332, 63 S.Ct. at 1106, 87 L.Ed. at 1434.

Furthermore, Texas had adopted a specific method of handling these cases which would be disrupted and result in conflicting state policies if the federal courts intervened in these matters.

warning that certain kinds of conduct are prohibited." *Colten, supra,* 407 U.S. at 110, 92 S.Ct. at 1957, 32 L.Ed.2d at 590.

Applying these standards, the Virginia Supreme Court has invalidated a statute governing tax assessments because the statute failed to provide any guidelines as standards for determining the assessment. *City of Waynesboro v. Keiser,* 213 Va. 229, 191 S.E.2d 196 (1972). The Court concluded that the statute authorizing tax assessments to vary corresponding with achieving "the ends of justice" is void for vagueness. In *Caldwell v. Commonwealth,* 198 Va. 454, 94 S.E.2d 537, 540, the Virginia Supreme Court stated that an act creating a statutory offense "must specify with reasonable certainty and definiteness the conduct which is commanded or prohibited, that is, what must be done or avoided, so that a person of ordinary intelligence may know what is thereby required of him." *Cf.* 14 Am.Jur. Criminal Law, § 19, 773–774. This proposition has been reaffirmed by the Supreme Court on two occasions.[18] *Hancock v. Cox,* 212 Va. 215, 183 S.E.2d 149 (1971); *Peacock v. Commonwealth,* 200 Va. 464, 106 S.E.2d 659 (1959). The Court notes that although the challenged statute is not part of the Virginia Criminal Code, violations of the statute may result in either a fine not to exceed $500 or incarceration up to twelve months or both. Section 4–92, Code of Virginia, 1950 as amended.

■ The Court must now judge whether Section 4–80.2 comports with the due process standards of the Virginia and United States Constitutions. The statute does not provide any definitions of the terms "unfair," "without due regard to the equities," and "without just cause or provocation." Nor does the context within which they are used elucidate their meaning. Furthermore, the statute is not steeped in tradition where, over the course of years, persons affected by the statute knew through their experiences the meaning and scope of the provisions.[19]

Section 4–80.2 fails to provide a person of ordinary intelligence with a standard of conduct to which said person is able to accord his conduct. The statute provides that the distributor should not terminate a wholesaler "unfairly." The Court is perplexed whether the statute is referring to a moral norm of fairness embraced by society as a whole or rather is addressing fairness defined as it relates to the distributor as to the wholesaler. Is it unfair to terminate a wholesaler if the distributor is not satisfied with the wholesaler's promotional and advertising efforts? Is it unfair to terminate if the wholesaler is a novice to the business and is not privy to the techniques and procedures of a wholesaling operation? Is it unfair to terminate if the wholesaler will not make deliveries to retailers on Saturdays on religious grounds? The Court can only speculate as to the answers to these questions. Presumably, a citizen of common intelligence is thrust into the same quagmire.

Similar difficulties arise when an attempt is made to decipher the statute's language "without due regard to the equities of such wholesaler." What are the elements of the equities? Is termination appropriate under the "equities" standard if the sales of the distributor's products plummeted? Is it sufficient that the distributor believes that the

---

**18.** In *Jefferson v. Commonwealth,* 212 Va. 255, 183 S.E.2d 734 (1971), the Supreme Court declared unconstitutional on vagueness grounds a statute which required the exclusion of each witness at trial "whose presence [was] not necessary to the proceedings." The precise meaning could only be ascertained by guess work and conjecture and as a result was void for indefiniteness.

**19.** *Compare United States Civil Service Commission v. National Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973). The Letter Carriers challenged the Hatch Act and regulations issued pursuant thereto on vagueness and First Amendment grounds. In contrast to the instant case, the Civil Service Commission had developed a body of law detailing what partisan conduct was forbidden by the rules. Additionally, the Civil Service Commission provided a system of interpreting and advising employees about the scope of the rules.

local wholesaler does not portray an appropriate image for its products? The Court opines that this provision of the statute does not meet the standards sufficient to comply with the due process requirements of the Fourteenth Amendment.

Finally, the provision "without just cause or provocation" brings up similar problems of interpretation. Additionally, reading "**unfairly without due regard** to the equities of such wholesaler . . . and without just cause or provocation" together only complicates the ambiguous statute. It occurs to the Court that termination may be unfair to the local wholesaler but without proper regard for the distributor's equities. The statute, however, mandates that it cannot be unfair, which apparently must be balanced with the distributor's equities. Is it possible that termination could be without just cause or provocation and yet, with due regard to the equities? The statute is replete with such vagueness and indefiniteness. Clearly, an ordinary person could not garner and follow a consistent pattern of prescribed behavior from the provisions of the statute. Chief Justice I'Anson's opinion reached the same conclusion. The Court finds it persuasive authority in the instant case.[20]

The Court adopts the admonition of the District Court in *Clark v. City of Fremont,* 377 F.Supp. 327 (D.Neb.1973) which concluded that:

"In balancing the Twenty-first Amendment and the Due Process Clause of the Fourteenth Amendment, this court can see no persuasive argument that the power given to the states under the Twenty-first Amendment will be diluted or frustrated in any way in requiring liquor regulations to comport with the Due Process Clause, especially the requirements of ascertainable standards and notice therein." *Clark, supra,* at 335.

In summary, the Court believes that Section 4–80.2 is void for vagueness and thus, violates the Fourteenth Amendment to the United States Constitution and Article I, Section 11 of the Constitution of Virginia.

It is ORDERED that this action be, and the same hereby is, DISMISSED, with prejudice.

---

APPENDIX A

VIRGINIA:

IN THE COURT OF HUSTINGS OF THE CITY OF PORTSMOUTH
January 12, 1976

AMERICAN MOTORS SALES CORPORATION,
 Petitioner,

v. CHANCERY DOCKET
 # 4498

E. L. BOWEN AND COMPANY,
INCORPORATED,
 Respondent.

---

20. *See also, United States Brewers' Association v. State,* 192 Neb. 328, 220 N.W.2d 544 (1974).

### DECLARATORY JUDGMENT

This cause coming on to be heard was submitted by the parties upon the petition of American Motors Sales Corporation for a declaratory judgment, and upon the answer of the respondent, E. L. Bowen and Company, Incorporated, and was argued by counsel.

And it appearing to the Court that an actual controversy exists between petitioner and respondent in respect of the matters and legal rights referred to in the said petition and in said answer, and that this Court has jurisdiction of such controversy under the provisions of the Virginia Declaratory Judgments Statute, Code of Virginia 1950, Sections 8–578 et seq., and that a judicial declaration of the legal rights of the parties should be made and entered, it is now, accordingly,

ADJUDGED, ORDERED and DECREED, as follows:

(1) That in respect of the claims and rights asserted by the respondent against the petitioner under paragraph (1) of Section 46–534 of the Code of Virginia 1950, as set forth in the petition and in the complaint of respondent against petitioner in its action pending in the District Court of the United States For the Eastern District of Virginia, Norfolk Division, said paragraph is valid and enforceable under Section 1 of Article I of the Constitution of Virginia, and is not a special or private law in contravention of paragraph (18) of Section 63 of Article IV of the Constitution of Virginia, and is not in contravention of Clause 3 of paragraph (8) of Article I of the Constitution of the United States, the Commerce Clause.

(2) That in respect of the claims and rights asserted by the respondent against the petitioner under and pursuant to paragraph (2) and paragraph (3) of said Section 46–534 of the Code of Virginia 1950, as set forth in the petition and in the complaint of respondent against petitioner in its said action in the said District Court of the United States, each of said paragraphs (2) and (3) is unconstitutional and void and unenforceable by respondent against petitioner, because in contravention of Section 11 of Article I of the Constitution of Virginia, in that each of said paragraphs are vague and indefinite and if applied or enforced against petitioner in said action in the District Court of the United States would deprive petitioner of its property without due process of law.

The Court does not deem it necessary to consider or decide the question whether said paragraphs contravene the Commerce Clause of the Constitution of the United States.

And it appearing to the Court that nothing further remains to be done in the cause, it is further ORDERED that the cause shall be stricken from the docket, but subject to be reinstated on the application of either party for good cause shown.