**Dan F. PRUITT, Jr., Rev., Plaintiff,**

v.

**Lawrence Douglas WILDER, as Governor of the Commonwealth of Virginia, in his official capacity, et al., Defendants.**

**Civ. A. No. 93–CV–578.**

United States District Court,
E.D. Virginia,
Richmond Division.

Jan. 20, 1994.

wealth of Virginia, in his official capacity; and Donald E. Williams, as Commissioner of the Commonwealth of Virginia Department of Motor Vehicles, in his official capacity.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on plaintiff's motions for summary judgment and permanent injunction and the motion of defendants Wilder and Milliken to dismiss or, in the alternative, for summary judgment. For the reasons stated below, the Court grants the plaintiff's motions and also grants the motion to dismiss of defendants Wilder and Milliken.

### I. Facts

This case arises out of the Commonwealth of Virginia Division of Motor Vehicle's ("DMV") "CommuniPlate" policy. A CommuniPlate is a personalized automobile license plate. Va.Code Ann. § 46.2–726 provides in pertinent part that "[t]he Commissioner [of DMV] may, in his discretion, reserve license plates with certain registration numbers or letters or combinations thereof for issuance to persons requesting license plates so numbered and lettered." In 1981, DMV initiated the CommuniPlate program. DMV markets this program and sends brochures to motor vehicle owners. The CommuniPlate program produces substantial income for the state since each CommuniPlate costs $10 on top of the normal license plate fee.

DMV has not formally promulgated written guidelines for the CommuniPlate program, but relies on a policy statement in determining whether to issue certain CommuniPlates. *See* Letter from Patricia B. Smith, Commissioner Special Assistant for Constituent Affairs, DMV, to R. Scott Carney, Attorney for Plaintiff, January 15, 1993 (Ex. D to Affid. of R. Scott Carney). This policy statement provides:

Licenses are not to be issued with any reference to drug culture, lewd and obscene words, deities, or combinations

James Jeffrey Knicely, Robert Scott Carney, Knicely & Cotorceanu, Williamsburg, VA and John W. Whitehead, Charlottesville, VA and Gary C. Leeds, T.C. Williams School of Law, Richmond, VA, for plaintiff.

Richard Linwood Walton, Jr., Sr. Asst. Atty. Gen., Eric K.G. Fiske, Jeffrey A. Spencer, Asst. Atty. Gen., Richmond, VA, for defendants Lawrence Douglas Wilder, as Governor of the Commonwealth of Virginia, in his official capacity; John G. Milliken, as Secretary of Transportation of the Common-

which might otherwise be considered offensive.

The ban on references to deities was put in place by DMV, at least in part, to "avoid demeaning deities" and because "DMV did not wish to have Virginia license plates identified with any particular religion or deity." Affid. of Donald E. Williams.

In fashioning its CommuniPlate program, DMV relied in large part on the CommuniPlate system utilized in California. In fact, DMV got a so-called "No–No" list from California, a list of letter-number combinations that will not be issued as CommuniPlates. Defendants state that this list initially was made up of combinations that California would not issue, either because they were too close to plates already issued or because they violated California's issuance policy. DMV has edited this list over the years by adding new combinations and deleting others, but there may still be California entries that would be suitable in Virginia and therefore should be taken off of the list. Apparently, when a CommuniPlate request is made, branch office personnel may reject it if the combination is on the "No–No" list. If the combination is not on the list but appears questionable in light of the policy, the combination is referred to a "word committee" for a determination of whether it violates DMV policy.

The present case stems from plaintiff Pruitt's application for a CommuniPlate saying "GODZGUD." Pruitt applied for this CommuniPlate in both 1992 and 1993 and the DMV denied his application both times, citing to its issuance policy. As a result of these denials, Pruitt has brought this suit seeking a declaratory judgment pursuant to 28 U.S.C. §§ 2201–02 and injunctive relief under 42 U.S.C. § 1983. Plaintiff alleges that defendants have violated his right to free speech and free exercise of religion, have violated the constitutional prohibition against unlawful establishment of religion, have violated his right to equal protection of the laws by unlawfully discriminating on the basis of the content or viewpoint of his speech, and have violated his rights under the Ninth and Fourteenth Amendments. In terms of injunctive relief, Pruitt specifically

seeks a mandatory injunction commanding defendants to issue him a CommuniPlate saying "GODZGUD" or, in the alternative, to revoke or repossess all CommuniPlates that are violative of the DMV policy if the Court should find that the policy is necessary to advance a compelling state interest under the Establishment Clause of the First Amendment. Pruitt also seeks attorneys' fees and costs and any other appropriate relief.

## II. *Analysis*

### A. *Plaintiff's Motion for Summary Judgment*

#### 1. *Standard*

■ "Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion." *Ewell v. Murray*, 813 F.Supp. 1180, 1182 (W.D.Va.1993) (quoting *Ross v. Communications Satellite Corp.*, 759 F.2d 355 (4th Cir.1985)). "Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* A fact is material if proof of its existence or nonexistence would affect the outcome of the case, and an issue is a genuine one if a reasonable jury might return a verdict in favor of the non-moving party on the basis of such issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

#### 2. *Plaintiff's Arguments*

■ Initially, it is important to note that, following the initiation of this suit and two others which were consolidated with it, the DMV voluntarily altered its CommuniPlate policy such that the ban on references to deities was removed. Plaintiff correctly argues that this does not render the present case moot, however. The United States Supreme Court has stated that:

[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot. A controversy may remain to be settled in such circumstances, e.g., a dispute over the legality of the challenged practices. The

defendant is free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion.

*United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). Without a court determination of the validity of its policy, DMV is free to alter its policy at any time, including re-imposing the "no deity" provision. Therefore, the Court has power to resolve the current case.

Pruitt essentially puts forth five arguments in support of his assertion that the DMV CommuniPlate policy is unconstitutional and therefore that his constitutional rights have been violated. He argues (1) "the DMV policy is impermissibly vague and overbroad and vests standardless discretion in government officials"; (2) "it constitutes an impermissible prior restraint on speech and free exercise of religion without adequate procedural safeguards"; (3) the policy represents an unreasonable regulation on speech in a non-public forum;[1] (4) the policy violates the Establishment Clause of the First Amendment; and (5) the policy violates the Equal Protection Clause of the Fourteenth Amendment by drawing distinctions based on religious grounds.

Defendants counter all of these arguments individually, but also state as a general argument against summary judgment that the plaintiff's motion is premature due to the lack of discovery in this case and the fact that some of the facts available to plaintiff have been misinterpreted.

■ Because the Court finds that the portion of the DMV policy which bans references to deities represents a viewpoint-based regulation of speech in a non-public forum[2] and therefore violates the Free Speech Clause of the First Amendment, made appli-

cable to the States by the Fourteenth Amendment, it is not necessary for the Court to reach the other arguments raised by plaintiff. Such a finding entitles plaintiff to the declaratory and injunctive relief he has requested.

### 3. Analysis of Non–Public Forum Argument

With respect to public property that is not a designated public forum open for indiscriminate public use for communicative purposes, we have said that "[c]ontrol over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral."

*Lamb's Chapel v. Center Moriches Union Free School District,* —— U.S. ——, ——, 113 S.Ct. 2141, 2147, 124 L.Ed.2d 352 (1993) (quoting *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.,* 473 U.S. 788, 806, 105 S.Ct. 3439, 3451, 87 L.Ed.2d 567 (1985)). In the present case, DMV is limiting access to CommuniPlates based on subject matter— references to deities are banned by the policy. Without reaching a conclusion about the reasonableness of the "no deity" policy, the Court finds that this restriction is not viewpoint neutral and therefore finds that the "no deity" policy is invalid.

The *Lamb's Chapel* case guides the Court in its analysis of whether the DMV ban on deities is viewpoint neutral. In that case, the board of the defendant school district, pursuant to state law, "issued rules and regulations with respect to the use of school property when not in use for school purposes." —— U.S. at ——, 113 S.Ct. at 2144. The rules and regulations allowed the property to be used for "social, civic, or recreational uses" but not for religious purposes. Plaintiffs twice tried to use the school facili-

---

1. Plaintiff, while initially arguing that the license plates actually are a public forum and therefore any exclusion based on content must be narrowly tailored to serve a compelling state interest, concedes for purposes of this motion that there may be fact issues with respect to the public forum question. Therefore, plaintiff argues that, even if the plates are a non-public forum, the policy represents unreasonable regulation.

2. The Court does not actually hold in this case that a CommuniPlate issued by DMV is a non-public forum, but rather assumes that the plates are non-public in rendering a decision on the immediate motion.

ties to show a film series on "child-rearing and family values" involving a Christian perspective. Both applications were denied based on the fact that the presentation was "church related," *Id.* at —— ——, 113 S.Ct. at 2144–45, and the plaintiffs filed suit.

In analyzing the school district's denial of the plaintiffs' applications, the Court noted that the district did not have to open up its property for any non-school uses. When it did, however, it became subject to constitutional scrutiny. The Court did not find it necessary to rule upon the issue of whether the school district had opened up school property to such an extent that the property was a designated public forum. Instead, the Court assumed that the school property was a non-public forum and then held the district's policy of denying religious uses invalid because it was not viewpoint neutral. The Court stated:

> That all religions and all uses for religious purposes are treated alike ... does not answer the critical question whether [the policy] discriminates on the basis of viewpoint to permit school property to be used for the presentation of all views about family issues and child-rearing except those dealing with the subject matter from a religious standpoint.
>
> . . . .
>
> The film involved here no doubt dealt with a subject otherwise permissible under Rule 10, and its exhibition was denied solely because the film dealt with the subject from a religious standpoint. The principle that has emerged from our cases "is that the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others."

*Id.* at —— — ——, 113 S.Ct. at 2147–48. The Court then concluded that the school district's argument that permitting its property to be used for religious purposes would violate the Establishment Clause was unfounded.

In the present case, it is clear that the DMV CommuniPlate policy allows references to religion in general. The policy says "no deities," not "no religious references." In practice, DMV has granted applications for plates which refer to religion in general, plates such as "BIBLE," "ICOR14" and "PSALM96." *See* Pl.'s Complaint ¶ 27, Defs.' Answer ¶ 15. Yet, Pruitt's request for "GODZGUD" was rejected. The fact that the DMV policy purports to treat all references to deities the same does not mean that the policy is viewpoint neutral. To the contrary, by allowing one sub-set of religious speech—that not directly referring to a deity—to be placed on CommuniPlates, while denying another sub-set of religious speech—that referring to deities—the DMV policy discriminates on the basis of the speaker's viewpoint. This is particularly evident when it is considered that some religions, such as Buddhism, do not make reference to a deity, whereas others, like Christianity, center on a deity or deities.

Defendants assert that the "no deity" policy is necessary because it avoids having the DMV "seen as endorsing ... deities or denigrating them and, accordingly, helps to satisfy [DMV's] constitutional obligation" not to violate the Establishment Clause. While a defense based on the Establishment Clause can potentially preserve the validity of a regulation or policy which is not viewpoint neutral, *see Lamb's Chapel*, —— U.S. at ——, 113 S.Ct. at 2148, the argument in this case is meritless. Without analyzing whether the public views license plates as statements made by the Commonwealth of Virginia or by DMV, it is sufficient to note that if there were indeed an Establishment Clause problem, DMV would have to expand its policy to ban all religious references. The "no deity" policy, because it does not cover all references to religion, simply does not avoid entanglement with religion.

Having found that the "no deity" policy is invalid, the Court must also point out the obvious. While the Court, because of the narrow nature of its holding, does not need to consider the validity of the phrase of the CommuniPlate policy which bans references to "combinations which might otherwise be considered offensive," it is clear that DMV may not now use this "offensiveness" standard to ban references to deities.

## B. *Motion to Dismiss or for Summary Judgment by Wilder and Milliken*

 Defendants Wilder and Milliken have filed a motion to dismiss or for summary judgment essentially asserting that they should not be parties to this case. It is unnecessary for the Court to delve into an analysis of their arguments. Because Wilder and Milliken were both sued in their official capacities, and because both have subsequently left their respective offices and therefore would have no power to implement any injunctive relief granted to the plaintiff by the Court, neither Wilder nor Milliken is properly before the Court. Therefore, their motion to dismiss is granted.

### III. *Conclusion*

For the foregoing reasons, plaintiff's motions for summary judgment and permanent injunction are granted and the motion of defendants Wilder and Milliken to dismiss is also granted.