SONS OF CONFEDERATE VETER-ANS, INC. and Virginia Division of Sons of Confederate Veterans, Inc., Plaintiffs

v.

Richard D. HOLCOMB, Commissioner, Virginia Department of Motor Vehicles, Defendant.

No. 7:99CV00530.

United States District Court, W.D. Virginia, Roanoke Division.

Jan. 18, 2001.

Arthur Patrick Strickland, Arthur P. Strickland, P.C., Roanoke, VA, Steven H. Aden, The Rutherford Institute, Charlottesville, VA, for Plaintiffs.

Gregory E. Lucyk, Jeffrey Alan Spencer, Mark L. Earley, William Henry Hurd, Office of Atty. General, Richmond, VA, for Commonwealth of Virginia.

Judith W. Jagdmann, Office of Atty. General, Richmond, VA, for Richard D. Holcomb.

### *ORDER*

KISER, Senior District Judge.

### *MEMORANDUM OPINION*

The controversy regarding the Confederate flag has apparently invaded its newest terrain, automobile license plate designs. In this matter, the Commonwealth of Virginia statutorily authorized the Virginia Department of Motor Vehicles ("DMV") to produce a specialty license plate honoring the Sons of Confederate Veterans ("the Sons"). Va.Code Ann.

§ 46.2–746.22. At the same time, however, the statute forbade such plates from bearing a logo or emblem of any kind. *Id.* The Sons now seeks a declaratory judgment and injunction, arguing that this restriction violates their free speech and equal protection rights under the First, Fifth, and Fourteenth Amendments, as well as under 42 U.S.C. § 1983. The Sons also seek nominal and compensatory damages for the intentional violation of Plaintiff's constitutional rights. Both sides have moved for summary judgment. For the reasons that follow, I grant Plaintiffs' Motion and deny Defendant's Motion because I find the restricting language in § 746.22 to be an impermissible restriction on speech.

### *Background*

Plaintiffs are the Sons of Confederate Veterans, Inc., a Tennessee non-profit corporation, and the Sons of Confederate Veterans, Inc., Virginia Division ("the Sons–VA"). The groups are suing by and through Patrick J. Griffin, the Sons' Commander–in–Chief, and Robert W. Barbour, Commander of the Sons–VA. The Sons are qualified under Internal Revenue Code § 501(c)(3).

Defendant is Richard D. Holcomb, the Commissioner of the Virginia Department of Motor Vehicles. The DMV is under Holcomb's supervision and is responsible for the specialty license plate program that is at issue in this case. Specialty license plates in Virginia have been issued that incorporate designs honoring over 300 diverse organizations, including various military veterans' organizations and fraternal organizations. Access to this program is restricted to only those groups so designated under Virginia statute.

The statute authorizing the creation of the Sons' specialty license plates, Va.Code Ann. § 46.2–746.22, reads as follows:

Special license plates; members of the Sons of Confederate Veterans.

On receipt of an application therefor and written evidence that the applicant is a member of the Sons of Confederate Veterans, the Commissioner shall issue spe-

cial license plates to members of the Sons of Confederate Veterans. *No logo or emblem of any description shall be displayed or incorporated into the design of license plates issued under this section.* (Emphasis added).

This language is identical to numerous other specialty license plate provisions with the sole exception of the ban on displaying any logos or emblems. This restriction was clearly aimed at excluding the organization's official logo, which incorporates the Confederate battle flag. This logo has been the Sons' official logo for over 100 years and is proprietary to the organization. Out of the scores of separate statutory provisions allowing hundreds of organizations to qualify for the special license plates, § 746.22 is the only one with any sort of speech restriction.

## Discussion

This case raises several interesting issues. The initial inquiry, of course, is whether the license plate design implicates Plaintiffs' rights at all, or whether the design is speech of the Commonwealth. Since I find the design at issue to be the speech of the Plaintiffs, I turn to First Amendment analysis to examine whether the statutory restriction is impermissible viewpoint discrimination. I find that the restricting language is inexorably crafted to discriminate against Plaintiffs based on the content of their message. Nevertheless, I also apply the traditional forum analysis to this matter, where I again find Plaintiffs' arguments compelling. For these reasons, I grant Plaintiffs' Motion for Summary Judgment and enjoin the Defendant from enforcing the restriction on logos or emblems that appears in § 746.22.

### Who Is Speaking

■ This issue is pivotal. If Defendant is correct in asserting that the specialty plates represent government speech, then the First Amendment rights of the Plaintiffs are not implicated whatsoever. Under this view, then, Plaintiffs' action is nothing more than an attempt to compel the Commonwealth to speak. In the alternative, Defendant also argues that specialty plates represent at least some sort of "joint speech," implicating both governmental and private speech. In either instance, Defendant maintains that it may veto the content because it cannot be compelled to speak unwillingly. *Cf. Rosenberger v. Rector & Visitors of the Univ. of Va.,* 515 U.S. 819, 833, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995) (stating "when the State is the speaker, it may make content-based choices").

I am not persuaded, however, that specialty plates at issue represent anything more than speech of the Plaintiffs. At the outset, let me make clear that I realize that certain license plate designs clearly represent speech by the Commonwealth. I find such state speech to be limited, however, to areas of speech regarding official governmental matters. Such plates include those bearing the Commonwealth's official bird, the Commonwealth's official state motto, and those honoring official governmental entities, such as various municipalities.

It is important to note that this type of speech by the Commonwealth is distinct and separate from the speech conveyed on other specialty plates. Indeed, the types of plates with governmental speech number few, while the vast majority of specialty plates available to drivers in Virginia represent private speech. Thus, plates honoring various occupational associations, civic and fraternal associations, industry associations, and so forth all represent the views of private actors, who are entitled to First Amendment protection.[1] Overall, I firmly believe that specialty plates can be

---

1. It is interesting to note that alumni of various out-of-state universities and various sectarian universities can readily obtain specialty plates honoring their chosen schools. This fact further buttresses my belief that many specialty plate designs represent purely private speech. Indeed, arguing that all specialty plates represent either governmental speech or joint speech, as Defendant argues, engenders absurd consequences in these instances. Furthermore, any plates that honor a deity or honor religious organizations may

divided into separate spheres of public (e.g., state symbols) speech and private speech and that the specialty plates at issue in this matter fall into the latter sphere.

Detailed analysis of the record also supports this finding.[2] The design of specialty plates is left entirely to the organization, and not the Commonwealth. *See,* DMV Special License Plate Design Criteria (recognizing explicitly that the private organization "may create a design" for the specialty plate "to represent [the] organization"). The only real restrictions on specialty plate participants' speech relate to formatting requirements, such as plate colors and the size and placement of logos. *Id.* Moreover, the DMV repeatedly uses the possessive pronoun "your," as in "your design" and "your plate," when corresponding with groups regarding design of specialty plates. In this case, the DMV even asked Plaintiffs to "consider using another flag or emblem" in a letter to the organization. Overall, I find these factors persuasive evidence that organizations speak through their designs of specialty plates. As such, I find the design at issue to represent speech of the Plaintiffs, and not speech of the government or joint-speech between the parties.

This line of distinction between public and private speech on license plates squares well with the leading court decisions on this matter. Defendant characterizes the Court's ruling in *Wooley v. Maynard,* 430 U.S. 705, 715, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), as standing for the proposition that *all* license plate designs represent state speech. Yet, the license plate in *Maynard* was one bearing the state motto of New Hampshire, "Live Free or Die." Though I would view such a plate bearing the state motto to be state speech, other courts have agreed with me in finding plates communicating individuals' political viewpoints or affiliations to be private speech. For instance, the Court in *Henderson v. Stalder,* 112 F.Supp.2d 589 (E.D.La.2000), recently ruled that the "Choose Life" specialty plate design implicated private speech rights. In fact, that court found State's contention that specialty plates represent state speech to be "an oxymoron." *Id.* at 595; *cf. Sons of Confederate Veterans, Inc. v. Glendening,* 954 F.Supp. 1099, 1101–02 (D.Md.1997) (finding specialty plates to represent private speech, with defendants not even "disput[ing]" that display of the logo is speech protected by the First Amendment"); Jed M. Silversmith, *Confederate License Plates at the Constitutional Crossroads,* 54 U. Miami L.Rev. 563, 585 (2000) (discussing various license plates and concluding that "states may generally not restrict specialty plates"); *but see, In the Matter of Denial of the Application for the Custom Plates "Wine" "Invino" "Vino" of Michael Paul Higgins v. Driver and Motor Vehicles Serv. Branch,* 170 Or.App. 542, 13 P.3d 531 (2000) (en banc) (finding all license plates to be state speech).[3]

■ Turning to Defendant's specific arguments, Defendant primarily asserts an unfettered ability to control the message because it views the plates as government speech. It is, of course, a well-settled point of law that the First Amendment protects only citizens' speech rights from government regulation, and does not apply to government speech itself. *Columbia Broad. Sys., Inc. v. Democratic Nat. Comm.,* 412 U.S. 94, 139 and n. 7, 93 S.Ct.

run afoul of the Establishment Clause, such as "GODZGUD." *Pruitt v. Wilder,* 840 F.Supp. 414 (E.D.Va.1994). (For First Amendment purposes, I find no meaningful distinction between specialty plates and CommuniPlates. *See infra.*)

**2.** Defendant likens the specialty plate program to the design of postage stamps by the United States Postal Service. Although this analogy is appealing at first blush, there is

nothing in the record to show how postage stamp designs are chosen. Indeed, at oral argument Plaintiff sought to explore this analogy, but Defendant objected because there is no evidence in the record on this factual issue.

**3.** Although this case supports Defendant's contention that the design of specialty plates is government speech, I simply disagree with the analysis and find it unpersuasive.

2080, 36 L.Ed.2d 772 (1973) (Stewart, J. concurring). Defendant notes that the plates themselves remain property of the Commonwealth at all times, see Va.Code § 46.2–713, purportedly showing that the Commonwealth has authority to decide whether to open up the forum to any private speech in the first place. Defendant also points to the access restrictions, see Va.Code § 46.2–725, and format parameters (i.e., logo size, positioning, etc.) as further evidence of Commonwealth actions to protect its own speech.

These arguments are far from persuasive, however. The fact that the government owns the medium for speech to which Plaintiffs seek access does not change the character of that speech into the Commonwealth's message. Indeed, a recent decision from the United States Supreme Court indicates that mere ownership of the means of communication is not determinative in deciding who the speaker is. *Santa Fe Indep. Sch. Dist. v. Doe,* 530 U.S. 290, 120 S.Ct. 2266, 147 L.Ed.2d 295 (2000). In *Santa Fe,* the Court did not find speech at public football games to be speech of the government, even though the government supplied the platform, amplification system, and occasion for the speech. Thus, I find here that governmental ownership of and restrictions upon license plates too play no fruitful role in the legal analysis of whether the logo restriction on Plaintiffs' plate design is constitutional.

Defendant also seeks to contrast the specialty plate program with the "CommuniPlate" program, where motorists can choose the characters that comprise their license plate number. *See Pruitt v. Wilder,* 840 F.Supp. 414 (E.D.Va.1994) (discussing Virginia's CommuniPlate Program). In essence, Defendant contends that the design and format of the plate represents speech of the Commonwealth, while the characters selected to identify vehicles represents speech by citizens. Yet, I see no legitimate reason for differentiating between specialty plates and CommuniPlates. Both forms of communication allow private expression to be placed on the medium of a license plate.

It makes no difference to the analysis whether this expression is conveyed via the letters and numbers of CommuniPlates or the logos and emblems of specialty plates. As such, I find specialty plates to represent Plaintiffs' speech in the same manner that CommuniPlates do.

Overall, I find that the specialty plate at issue in this case represents speech of the Plaintiffs. While the design of specialty plates featuring official state symbols represent speech by the government, the design of those plates honoring private entities is speech of those entities. This interpretation not only reconciles the leading cases on specialty plates, but also finds ample factual support in the record. Because Plaintiffs' speech rights are affected by the restriction contained in § 746.22, I will undertake the First Amendment analysis called for in this situation.

*Viewpoint Discrimination*

At the outset, I note that the logo at issue does not fall within one of the three categorical exceptions to speech protection: defamation, obscenity, and "fighting words." *See R.A.V. v. City of St. Paul,* 505 U.S. 377, 382–83, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). Indeed, neither party has asserted as much. As such, I find that the Sons' logo incorporating the Confederate battle flag is entitled to speech protection under the First Amendment. *Cf. Texas v. Johnson,* 491 U.S. 397, 404–06, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (finding the United States flag entitled to First Amendment protection); *Glendening,* 954 F.Supp. 1099.

The First Amendment jurisprudence has long been informed by the concept of a marketplace of ideas. Expression is a virtue of our society; we proscribe only select few things from entering the marketplace. "[O]ur history says that it is this sort of hazardous freedom—this kind of openness—that is the basis of our national strength and of the independence and vigor of Americans who grow up and live in this relatively permissive, often disputatious society." *Tinker v. Des Moines In-*

*dep. Cmty. Sch. Dist.*, 393 U.S. 503, 508–09, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).

Given the importance of free discourse, the First Amendment does not tolerate viewpoint-based discrimination by the government. In a strikingly similar matter involving the same logo on Maryland specialty plates, Judge Smalkin succinctly wrote, "Regardless of the type of forum, any governmental regulation of speech must be viewpoint-neutral." *Glendening*, 954 F.Supp. at 1102. This mandate stems from the Supreme Court's recent articulation in *Rosenberger*, 515 U.S. 819, 115 S.Ct. 2510, 132 L.Ed.2d 700, that set forth a framework for First Amendment analysis "forbidding the State to exercise viewpoint discrimination, even when the limited forum is one of its own creation." *Id.* at 829, 115 S.Ct. 2510. Thus, the initial inquiry into this case must be to determine whether the ban in § 746.22 is viewpoint-based.

 After surveying the relevant case law, I find that the Commonwealth's exclusion of the Sons' logo is viewpoint-based. Plaintiffs' logo can be designed to meet the objective parameters that all specialty plates require, such as placement and size. It is clear to me, however, that the motivation behind the Commonwealth's ban of logos or emblems was to avoid controversy by preventing Plaintiffs from designing a plate that displays the Confederate battle flag. Out of hundreds of specialty plates in existence, only that bearing the Sons' logo is targeted. This is clearly a content-based restriction and runs explicitly afoul of the presumption that restrictions are "impermissible when directed against speech otherwise within the forum's limitations." *Rosenberger*, 515 U.S. at 830, 115 S.Ct. 2510 (citing *Perry Educ. Assn. v. Perry Local Educators' Ass'n.*, 460 U.S. 37, 46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)).

At the same time as the Commonwealth attempts to ban Plaintiffs' logo, however, I note that the Commonwealth has allowed other politically-engaged organizations to design plates. These groups include the National Rifle Association, the AFL–CIO, Vietnam veterans, and the Boy Scouts. Although I find the Commonwealth's contention of denying the Sons' logo for the purpose of avoiding political controversy to be understandable, it nonetheless provides a legally insufficient reason for restricting Plaintiffs' speech. In sum, the Commonwealth seeks to bar the Sons from making their political statement while allowing various other groups to make their political statements. Such a restriction seems to be exactly the type at which First Amendment protections are designed to erase.

This mode of analysis has curried favor with nearly all courts that have dealt with similar situations. Clearly, the most factually similar precedent is *Sons of Confederate Veterans v. Glendening*, 954 F.Supp. 1099, a case brought by the same plaintiffs involving the same design for a vehicle license plate. Just as I am doing, that court also grounded its decision on the threshold issue of whether the state was engaging in viewpoint-based discrimination. The *Glendening* court held that Maryland could not deny access to its specialty plate program. Similarly, the Court in *Pruitt v. Wilder*, 840 F.Supp. 414, also followed this approach, finding a ban of all references to deities on Virginia license plates to constitute impermissible viewpoint-based regulation. *Id.* at 416. Moreover, a court dealing with "Choose Life" specialty plates too adopted this mode of analysis, finding that government was "acting as a censor of speech by deciding which messages appear on license plates." *Henderson v. Stalder*, 2000 WL 1875987 (E.D.La. Dec.22, 2000). Lastly, the Court in *Cuffley v. Mickes*, 208 F.3d 702, 706 (8th Cir.2000), held that government cannot impose an unconstitutional condition on any type of government benefit or participation.[4] This mass of recent cases serves

---

4. Defendant has absolutely no answer for *Cuffley* other than to assert: "the Eighth cir-

cuit is wrong." Def. Reply Br. at 10.

to substantiate the prohibition of viewpoint-based discrimination that follows from *Rosenberger*, 515 U.S. 819, 115 S.Ct. 2510, 132 L.Ed.2d 700.

Defendant's primary counter-argument is that the prohibition of the Sons' logo keeps the Commonwealth in a neutral position on a matter of great sensitivity and avoids the danger that it will be misunderstood. Yet, this stance seems anathema to our system of free speech. Even though the Commonwealth's ban of the Sons' logo may, indeed, prevent some motorists from becoming upset or enraged, this means for squelching unrest runs afoul of Justice Douglas' words in *Terminiello v. Chicago*, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949):

> "[A] function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance . . . ."

*Id.* at 4, 69 S.Ct. 894. Just as the Supreme Court has found that an "apprehension of disturbance . . . is not enough to overcome the right to freedom of expression," *Tinker*, 393 U.S. at 508, 89 S.Ct. 733, neither is a fear of causing controversy. By banning members of the Sons from using specialty plates displaying the Confederate flag on their license plates, the Commonwealth has undermined one of the very foundations of the First Amendment in our civil society.

Simply stated, the prohibition of the Sons' logo violates the key protection under the First Amendment against viewpoint discrimination. Indeed, "The First Amendment does not permit [the government] to impose special prohibitions on those speakers who express views on disfavored subjects." *R.A.V.*, 505 U.S. at 391, 112 S.Ct. 2538; *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*,

502 U.S. 105, 116, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991); *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 229–30, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987). Because I find that the second sentence of § 746.22 does impose such a special restriction, I declare that language invalid on its face.

*Forum Analysis*

■ As discussed above, impermissible viewpoint discrimination is sufficient and independent grounds for striking down the ban at issue, regardless of the forum in which the expression occurs. Undertaking forum analysis, however, yields yet additional reasons for the Sons to prevail.

Government property is typically divided into three categories for First Amendment analysis: the traditional public forum, the designated public forum, and the nonpublic forum. *Cornelius v. NAACP*, 473 U.S. 788, 802, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985); *Perry*, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794. The quintessential traditional public forums are streets and parks: government owned areas that "have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thought between citizens, and discussing public questions." *Perry*, 460 U.S. at 45, 103 S.Ct. 948 (quoting *Hague v. CIO*, 307 U.S. 496, 515, 59 S.Ct. 954, 83 L.Ed. 1423 (1939)). A designated public forum "consists of public property which the state has opened for use by the public as a place for expressive activity." *Perry*, 460 U.S. at 45, 103 S.Ct. 948. Reasonable time, place and manner restrictions are permissible, and content-based regulations require furtherance of a compelling state interest. *Id.* at 45, 103 S.Ct. 948. Lastly, a nonpublic forum consists of public property that is not a public forum by either tradition or designation. *Id.* at 46, 103 S.Ct. 948. Government may regulate the speech at a nonpublic forum so long as the regulations are "reasonable and not an effort to suppress expression

merely because public officials oppose the speaker's view." *Id.* at 46, 103 S.Ct. 948.

■ In order to make the determination as to which of these three areas of analysis government property falls,[5] courts typically turn to four factors: (1) government policy; (2) government practice; (3) the nature of the property; and (4) the compatibility of the place with the expressive activity sought to be conducted there. *Cornelius,* 473 U.S. at 802, 105 S.Ct. 3439. Two of these criteria in particular, government practice and compatibility between speech and forum, are most helpful in this case.

■ Regarding government practice, I begin by noting the wide range of specialty plates that have been created. Indeed, well over three hundred organizations have been granted specialty plates via statute, including scores of fraternal, civic, and professional organizations. Moreover, as discussed earlier, this list also includes numerous groups that have taken sensitive or controversial positions on matters of public policy.

Turning to the compatibility between desired speech and place, I find there to be a nexus in this case between the expression sought and the forum created. For years, drivers have paid sums to state vehicle departments in order to receive license plates bearing desired combinations of letters and numbers. While this type of license plate is referred to as a "CommuniPlate" in Virginia, the point of that process is unmistakable: the license plate is a means of expressing speech. Speaking through a design or logo does not change the character of this speech. The very existence of Virginia's specialty plate program proves that this type of speech is compatible with logo plates. And, it is important to note that the Sons' logo itself is not inconsistent with the purpose of the forum because it fits within the DMV's own content-neutral format regulations for logos.

As such, I find this analysis provides a strong indication that the specialty plate program represents a designated public forum. Indeed, allowing groups to place various slogans and designs on license plates represents the Commonwealth's intentional action to open up a nontraditional forum for public discourse. I thus find the specialty plates to represent precisely the type of designated public forum contemplated by the Court in *Cornelius,* 473 U.S. at 802, 105 S.Ct. 3439. This conclusion is in line with the Court's analysis in *United States v. Kokinda,* 497 U.S. 720, 726–27, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990), applying strict scrutiny to "regulation of speech on property that the Government has expressly dedicated to speech activity" and applying reasonableness test to "regulation of speech activity where the Government has not dedicated its property to First Amendment activity." As such, I find the specialty plate to constitute a designated public forum, with attendant speech regulation subject to strict scrutiny.

Defendant's only real argument against this conclusion is that its assertion that the specialty plate program is not open to "the public" for expressive activity. I do not question that, as constituted at the time of this opinion, the specialty plate program allows design of plates only via specific statutory authorization. Unfortunately for Defendant, I find this argument to lack force in the current matter, however. Any group can petition the legislature for the authorization for designing a specialty plate. To date, hundreds and hundreds of groups have jumped through the requisite legislative hoops needed to participate in the specialty plate program. Indeed, the practical result has been the creation of a forum for political discussion: from unions to tobacco to conservation to gun rights, the specialty plates all "honor" organizations on a particular side of the issue without limiting their ability to communicate

**5.** I note that both parties apparently dismiss—quite properly in my opinion—any notion that the license plate constitutes a pure public forum.

via the plates. I see the Confederate flag issue as being no different in terms of First Amendment protection than these other politically divisive ones. As such, I find the specialty plates at issue to be sufficiently open to the public to constitute a designated public forum. *See, e.g., Kokinda,* 497 U.S. at 726, 110 S.Ct. 3115.

Subjecting § 746.22 to strict scrutiny, the restriction on logos and emblems clearly fails. Simply stated, the Commonwealth does not put forth a compelling state interest protected by the prohibition on logos. As such, forum analysis provides an independent, albeit corroborative, reason for finding constitutional violations in § 746 .22.

*Remedies*

The most difficult aspect of this case is fashioning a remedy to cure the constitutional violation.

■ One approach is to analyze the statute and determine whether the offending prohibitions of logos and emblems can be severed from the rest of the statute. I think it can.

■ State law governs the severability of a state statute challenged in federal court. *Department of Treasury v. Fabe,* 508 U.S. 491, 509–510, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993); *Environmental Tech. Council v. Sierra Club,* 98 F.3d 774, 778 n. 21 (4th Cir.1996). In Virginia, the test of severability in the Commonwealth "is whether the legislature would be satisfied with what remains after the invalid part has been eliminated." *City of Portsmouth v. Citizens Trust Co.,* 216 Va. 695, 699, 222 S.E.2d 532; *see also, City of Waynesboro v. Keiser,* 213 Va. 229, 235, 191 S.E.2d 196 (1972); *Hannabass v. Maryland Cas. Co.,* 169 Va. 559, 571, 194 S.E. 808 (1938). This "intent of the legislature" test for severability is buttressed by the modern-day Virginia Code, which requires that the severed and remaining portions "must operate in accord with one another." Va.Code

§ 1–17.1. Based on the record before me, I conclude that the overriding intent of the legislature in § 746.22 was to honor the Sons of the Confederacy.[6] The passage of any statute authorizing a specialty plate for a particular organization seems tautological proof of the intent to honor that organization. Moreover, the Commonwealth itself repeatedly underscores this intent in its filings with the Court:

— the license plate is "issued by Virginia to *honor* their organization," Def. Mem. 1 (emphasis in original);

— the plate "bestows an honor," *Id.* at 7;

— the plate's "message—honoring the Sons—...," *Id.* at 21;

—"The decision by the General Assembly to · honor the Sons with a license plate," Def. Reply Mem. 9.

At the same time, there is no evidence that the legislature intended the restricting language in § 746.22 to lessen the honor or obscure the distinction. Yet, without the logo, Plaintiffs will be left with little more than a specialty plate that is restricted and inferior to plates issued to other organizations—a watered down honor to say the least. As such, I find the proper remedy in this case to be to enjoin the Defendant from enforcing the second sentence of § 746.22 and to order him to issue specialty plates developed by Plaintiffs that meet the content-neutral restrictions with which all other specialty plates must comply.

Regardless of severability, I note that this Court sits as a forum of equity with all the inherent equitable powers to fashion a remedy to cure the constitutional violation. Courts often times find themselves in similar situations and regularly turn to injunctive relief to remedy unconstitutional government action. *See, e.g., Ross v. Meese,* 818 F.2d 1132, 1134–35 (4th Cir.1987) (allowing "appropriate injunctive relief" upon showing that constitutional rights were vi-

6. Plaintiffs point out that the language restricting the use of the logo or emblem was a last-minute addition in committee. Whether the statute would have been enacted without the language, we will never know. But, the fact remains that the purpose of the statute—as in all specialty plate statutes—was to honor the designated organization.

olated); *Lewis v. Blackburn,* 734 F.2d 1000, 1008 (4th Cir.1984) (issuing injunctive relief when plaintiff had no adequate remedy at law); *Faulkner v. Jones,* 1994 WL 456621 at *2 (D.S.C.1994) (finding constitutional violation to constitute irreparable injury as a matter of law for injunctive purposes); *Davis v. District of Columbia,* 158 F.3d 1342, 1346 (D.C.Cir.1998) (noting the "presumed availability of federal equitable relief against threatened invasions of constitutional interests"). Were I to rule that the statute is non-severable, I would be forced to strike down the entirety of § 746.22 and thereby exacerbate, not cure, the constitutional violation. Fortunately, equitable relief for the constitutional violation would then afford me the ability to provide a remedy to Plaintiffs by issuing the injunction they request. As such, even were I to find § 746.22 to be non-severable, I would nonetheless exercise equitable power in enjoining Defendant from enforcing the second sentence and requiring the issuance of plates displaying the Sons' logo.

Overall, the practical effect of either remedy that I have contemplated is the same: eliminating the second sentence of the § 746.22. I find this effect to represent the best means of fulfilling the intent of the legislature—to honor the Sons of the Confederacy—in a constitutionally permissible manner. *Cf. Pruitt v. Wilder,* 840 F.Supp. 414 (ordering declaratory and injunctive relief that resulted in the issuance of a Virginia license plate reading "GOD-ZGUD"). Even if this remedy violates the intent of the legislature in passing § 746.22, then I find the issuance of an injunction to the same effect to be equitably necessary to cure the constitutional violation that has taken place.

Although Plaintiffs have requested nominal and compensatory damages, they have offered no proof of monetary damages nor have they argued the issue. I also have strong reservations that monetary damages are recoverable in this case because this is a suit against the Commonwealth of Virginia. I thus deny Plaintiffs' request for damages.

I reserve my ruling on the issue of costs and attorney's fees under 42 U.S.C.1988, to be taken up at a later scheduled date.

The Clerk is direct to send a certified copy of this Memorandum Opinion to all Counsel of Record.

Before the Court are cross-motions for Summary Judgment. For the reasons stated in the attached Memorandum Opinion, **I GRANT PLAINTIFF'S MOTION** for Summary Judgment and **DENY DEFENDANT'S MOTION** for Summary Judgment. Defendant is **ENJOINED** from enforcing the second sentence of Va. Code § 46.2–746.22 and must issue specialty plates designed by Plaintiffs that comply with the content-neutral parameters with which all other specialty plates must comply.

There is no award of damages in this matter, and the issue of costs and attorneys' fees shall be taken up at a later date.

The Clerk is directed to send certified copies of this Order to all counsel of record.